Sheila A.G. Armbrust (CABN 265998)
sarmbrust@sidley.com
SIDLEY AUSTIN LLP
101 California Street, 35th Floor
San Francisco, CA 94111
Telephone: (415) 772-1200
Facsimile: (415) 772-7400

Carter G. Phillips (*pro hac vice forthcoming*)
cphillips@sidley.com
Jennifer J. Clark (*pro hac vice forthcoming*)
jennifer.clark@sidley.com
Christopher A. Eiswerth (*pro hac vice forthcoming*)
ceiswerth@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711

*Attorneys for Plaintiffs Alibaba Group Holding Limited
and Alibaba Group (U.S.) Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALIBABA GROUP HOLDING LIMITED; ALIBABA GROUP (U.S.) INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF DEFENSE a/k/a UNITED STATES DEPARTMENT OF WAR; PETE HEGSETH, *in his official capacity as Secretary of Defense*; STEPHEN FEINBERG, *in his official capacity as Deputy Secretary of Defense*; AND MICHAEL CADENAZZI, *in his official capacity as Assistant Secretary of Defense for Industrial Base Policy*, <br><br> Defendants. | Case No. 26-cv-6227 <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> 1. **VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706(2)(A), (C), (E);** <br> 2. **VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706(2)(D);** <br> 3. **VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706(2)(B);** <br> 4. **VIOLATION OF THE FIRST AMENDMENT OF THE U.S. CONSTITUTION;** <br> 5. **VIOLATION OF THE FIFTH AMENDMENT OF THE U.S. CONSTITUTION** |

Plaintiffs Alibaba Group Holding Limited and Alibaba Group (U.S.) Inc. (collectively, "Alibaba") bring this action against Defendants United States Department of Defense; Pete Hegseth, in his official capacity as the Secretary of the United States Department of Defense; Stephen Feinberg, in his official capacity as the Deputy Secretary of Defense; and Michael Cadenazzi, in his official capacity as the Assistant Secretary of Defense for Industrial Base Policy, and allege as follows:

### INTRODUCTION

1.     Alibaba Group Holding Limited is a publicly traded e-commerce and cloud-computing company whose platforms American businesses use to reach Chinese consumers. On June 8, 2026, the Department of Defense branded Alibaba a "Chinese military company" ("CMC") based on its determinations that Alibaba is "indirectly affiliated with" China's State-Owned Assets Supervision and Administration Commission ("SASAC"), and that Alibaba is a "military-civil fusion contributor to the Chinese defense industrial base because it is affiliated with" the Ministry of Industry and Information Technology ("MIIT").

2.     The determinations have no basis in fact or law. Alibaba Group Holding Limited is owned by a broad, public shareholder base; since early 2025, the only investors to hold five percent or more of its stock are three American financial institutions. Alibaba is governed by an independent board, none of whom has any military affiliation. Its products and services are built for retail, logistics, and enterprise information technology—not weapons, defense, or intelligence. Its contracts and compliance controls affirmatively prohibit military use. Alibaba holds no military certifications or licenses and has no relationship with SASAC at all. Its only connection to MIIT is the ordinary regulatory compliance that every technology company operating in China—including many American firms—must observe. The relationship is no different from Alibaba's dealings with United States government agencies. A regulator is not an affiliate.

3.     Nor did the Department reach its conclusion through any fair process. Alibaba learned that the Department was considering the designation, asked to be heard, and, on January 21, 2026, met with the Department to present information and answer any concerns. On February 13, 2026,

1

COMPLAINT
CASE NO. 26-CV-6227

the Department posted a designation, withdrew it within the hour citing a need to review "the most recent information available," and then declined to tell Alibaba what information it was relying on. Alibaba submitted a comprehensive written response anyway. The Department never answered it. Months later, on June 8, 2026, the Department republished the identical two-sentence designation with no substantive explanation.

4. The consequences of this designation are immediate—and they reach beyond Alibaba's balance sheet to the First Amendment itself. 10 U.S.C. § 4663 limits Alibaba's ability to retain advocates to communicate on its behalf with legislative and executive branch officials regarding core political issues—including legislation, rules, regulations, and executive orders. It does so by penalizing any Department contractor that retains advisors who conduct such "lobbying activities" on behalf of a designated company, effectively forcing Alibaba's advocates to abandon it. The effect is already being felt: advocates who have represented Alibaba for years have informed the company that they can no longer do so. The designation thus does not merely impose commercial costs—it strips Alibaba of its ability to speak, to petition the government through its chosen representatives, and to associate with others to advance or defend its position at the very moment it most needs to be heard. That a company labeled a national-security threat is simultaneously cut off from the advocates who might contest the label inverts the constitutional order. The freedom of speech and the right to petition for redress of grievances are most vital precisely when the government has acted against you. The designation's remaining consequences compound the injury. It bars the Department from contracting with Alibaba or entities it controls, operates as a gateway to a widening array of further federal restrictions and state divestment measures, and has already drawn public demands that Alibaba be delisted from U.S. exchanges and cut out of American supply chains. The reputational and commercial harm to a company whose business depends on the trust of its U.S. partners is concrete and, like the loss of its advocates, cannot be undone.

5. Alibaba brings this action to set the designation aside. It asks the Court to declare the designation unlawful and to vacate it as arbitrary and capricious, in excess of the Department's statutory authority, adopted without the process the law requires, and contrary to the Constitution;

to declare that 10 U.S.C. § 4663 facially violates the First Amendment and is unconstitutional as applied to Alibaba; to hold that Section 1260H is void for vagueness as the Department has applied it to Alibaba; and to enjoin the Department from enforcing or relying on the designation or Section 4663.

## JURISDICTION AND VENUE

6.    The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal-question jurisdiction) because this action arises under the United States Constitution and the laws of the United States, including the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*

7.    The Court has authority to grant declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, the Administrative Procedure Act, 5 U.S.C. § 702, and the Court's inherent equitable powers.

8.    Venue is proper in this district under 28 U.S.C. § 1391(b), (c)(2), and (e)(1) because Defendants are federal agencies and officers acting in their official capacities, a substantial part of the events or omissions giving rise to the claim occurred in this district, Plaintiff Alibaba Group (U.S.) Inc. maintains its principal place of business in this district, and no real property is involved in this action.

9.    San Jose divisional assignment is proper under Civil Local Rule 3-2(e) and General Order 44 because Alibaba Group (U.S.) Inc. has its principal place of business in Sunnyvale and because this action arises in Santa Clara County.

## PARTIES

10.    Alibaba Group Holding Limited is a publicly traded Cayman Islands holding company with shares listed on the New York Stock Exchange and the Hong Kong Stock Exchange. Its principal executive offices are in Hangzhou, China.

11.    Alibaba Group (U.S.) Inc. is a Delaware corporation with its principal place of business in Sunnyvale, California.

3

12.    Defendant United States Department of Defense is an executive agency within the meaning of 5 U.S.C. § 551(1). Under Section 1260H, the Department is responsible for publishing and revising a list of CMCs, as identified by the Secretary of Defense.

13.    Defendant Pete Hegseth is the Secretary of Defense, who under Section 1260H is responsible for identifying CMCs "based on the most recent information available." He is sued in his official capacity.

14.    Defendant Stephen Feinberg is the Deputy Secretary of Defense, who determined that Alibaba qualified for designation as a CMC. He is sued in his official capacity.

15.    Defendant Michael Cadenazzi is the Assistant Secretary of Defense for Industrial Base Policy, who manages the CMC designation process and maintains the 1260H List. He is sued in his official capacity.

## FACTUAL ALLEGATIONS

### I.    Alibaba Provides Products and Services Exclusively for Civilian and Commercial Purposes.

16.    Alibaba is an e-commerce and cloud-computing company that provides products, technology, infrastructure, and services to consumers and businesses solely for civilian and commercial use.

17.    The company was founded in 1999 by eighteen individuals led by Jack Ma, a former English teacher, on the premise that the Internet would let small businesses compete globally. Its first venture was an English-language online marketplace connecting small Chinese businesses with buyers worldwide.

18.    Today, Alibaba is an e-commerce company with vast distribution capability in China that has systemic importance to American companies selling to Chinese consumers. Alibaba's e-commerce platforms—including Taobao, TMall, and AliExpress—connect merchants with more than 1 billion consumers around the world, of them 820 million Chinese consumers. In 2024, Alibaba's Chinese e-commerce platforms facilitated over $50 billion in American-branded product

sales to Chinese consumers—more than $6.1 billion of it by U.S. small businesses with fewer than 100 employees.

19.    Alibaba Cloud, the company's cloud-computing platform, provides commercial cloud services to companies operating in China, including U.S. companies, and in global markets. Alibaba's open-source AI models power its commercial e-commerce and cloud products and allow users to build their own civilian applications.

20.    Alibaba's policies and standard contractual terms expressly prohibit defense contracting, sponsorship of military projects, and any military or defense use of its off-the-shelf services and consumer platforms. Alibaba holds no certifications or licenses to supply military-grade products to the People's Liberation Army (the "PLA"); it is not registered on any defense-procurement platform; and it does not participate in Chinese or U.S. military procurement.

**II.    Alibaba Is Not Affiliated with the Chinese Government or Military.**

21.    Alibaba is a private market participant that operates independently and globally. Alibaba Group Holding Limited is dual-listed on the New York Stock Exchange and the Hong Kong Stock Exchange and is therefore subject to the securities laws and regulatory requirements of the United States and Hong Kong, including extensive disclosure, reporting, and audit obligations governing its ownership, governance, and operations.

22.    Alibaba Group Holding Limited has a single class of ordinary shares, each carrying one vote, and a broad, diverse shareholder base. No individual shareholder controls the company, and no state-owned entity ("SOE") has ever controlled the company. Alibaba's largest shareholders have traditionally been American and international institutional investors: since early 2025, only three—JPMorgan, Citigroup, and BlackRock—have held five percent or more of Alibaba's stock. Based on publicly available information, other major holders include the Vanguard Group, State Street, Fidelity Management & Research, T. Rowe Price, and Goldman Sachs.

23.    Alibaba's Board of Directors comprises private individuals with diverse international backgrounds, including citizens of the United States, Canada, Singapore, Australia, and China

(permanent residents of the Hong Kong Special Administrative Region). No director has any military background or affiliation.

24.     The government of the People's Republic of China ("PRC") and the PLA hold no "golden shares" or special control rights in Alibaba, and no SOE has any right to appoint an Alibaba director.

### III.     Statutory Framework: Section 1260H

25.     Section 1260H of the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021 requires "[t]he Secretary of Defense [to] identify each entity the Secretary determines, based on the most recent information available, is operating directly or indirectly in the United States or any of its territories and possessions, that is a Chinese military company." Pub. L. No. 116-283, § 1260H(a), 134 Stat. 3388, 3965 (Jan. 1, 2021) (codified as amended at 10 U.S.C. § 113 note).

26.     In 2024 and 2025, Congress broadened the definition of "Chinese military company." *See* Pub. L. No. 118-159, §§ 851, 1346, 138 Stat. 1995, 2123 (Dec. 23, 2024); Pub. L. No. 119-60, §§ 1262(a), 1263, 1701, 139 Stat. 1118, 1119, 1209 (Dec. 18, 2025).

27.     As amended, the statute now defines a "Chinese military company" as "an entity that is"—(i)(I) "directly or indirectly owned by, controlled by, or beneficially owned by, affiliated with, or in an official or unofficial capacity acting as an agent of or on behalf of," a lengthy list of Chinese military, security, and industrial organs including the PLA, the Ministry of State Security ("MSS"), MIIT, SASAC, and the State Administration of Science, Technology, and Industry for National Defense ("SASTIND"); or (II) "identified as a military-civil fusion contributor to the Chinese defense industrial base"—and (ii) "engaged in providing commercial services, manufacturing, producing, or exporting." Section 1260H(g)(2)(B)(i)–(ii).

28.     Section 1260H(g)(3) defines "military-civil fusion contributor" to "include[] any of the following":

6
COMPLAINT
CASE NO. 26-CV-6227

a.    Entities "knowingly receiving assistance" from the Chinese government or Chinese Communist Party through efforts "related to" the Chinese military industrial planning apparatus or "in furtherance of" its objectives, "including" designation as a "Single Champion," "Little Giant," or any "successor" designation;

b.    Entities "managed, overseen, or supervised by, otherwise under the control of, or affiliated with (including by means of formal participation in research partnerships and projects)" MIIT, SASAC, SASTIND, the MSS, or the PLA;

c.    Entities "receiving assistance, operational direction or policy guidance from" SASTIND;

d.    Entities or subsidiaries defined as a "defense enterprise" by the PRC State Council;

e.    Entities "residing in or affiliated with a military-civil fusion enterprise zone or receiving assistance" through such a zone;

f.    Entities awarded specified Chinese military production licenses;

g.    Entities that "advertise on national, provincial, [or] non-governmental military equipment procurement platforms" in the PRC; and

h.    "Any other entities the Secretary determines is appropriate."

29.    The list in subsection (g)(3) purports to be illustrative, not exhaustive—it "includes" these categories—and its final catch-all, subsection (g)(3)(H), authorizes the Secretary to designate "[a]ny other entit[y] the Secretary determines is appropriate," subject to no stated standard.

30.    A CMC designation also reaches, by operation of the statute, "a wholly-owned or wholly-controlled subsidiary or wholly-owned or wholly-controlled affiliate of such an entity," and "any entity that owns in the aggregate, directly or indirectly, 50 percent or more of" a CMC. Section 1260H(g)(2)(C).

31.    The consequences of designation have grown more severe over time. The original statute named the listed entities as CMCs but did not impose direct restrictions. As amended,

7

COMPLAINT
CASE NO. 26-CV-6227

however, the statute provides that, beginning June 30, 2026, the Department may not "enter into, renew, or extend a contract for the procurement of goods, services, or technology with" a CMC. Pub. L. No. 118-31, § 805(a)(1)(A), 137 Stat. 315 (Dec. 22, 2023) (codified at 10 U.S.C. note prec. § 4651). As of the same date, the Department also may not contract with any entity—or its parent or subsidiary—that is itself a party to a contract with a "covered lobbyist," which includes anyone who engages in "lobbying activities" for a CMC—including communicating with certain legislative and executive officials regarding legislation, rules, regulations, and executives orders. *See* Pub. L. No. 118-159, § 851, 138 Stat. 1995, 2010 (Dec. 23, 2024) (codified at 10 U.S.C. § 4663).

32.    Further, Congress has directed the President to prepare reports for Congress, starting in 2027, stating whether CMCs should also be included on the Non-SDN Chinese-Military Industrial Complex Companies List maintained by the Department of Treasury's Office of Foreign Assets Control, which precludes U.S. persons from transacting in listed entities' public securities. *See* Pub. L. No. 119-60, § 8531, 139 Stat. 718, 1936 (Dec. 18, 2025) (codified at 50 U.S.C. § 4581 note).

**IV.    Alibaba Has Consistently Shown the Department That It Is Not a CMC.**

33.    On January 7, 2025, the Department published a revised 1260H List of more than fifty companies and dozens of subsidiaries and affiliates. Alibaba was not on that list, nor was it on any of the preceding versions of the list.

34.    On October 7, 2025, Deputy Secretary Feinberg reportedly transmitted a memo to Congress stating that the Pentagon had concluded that Alibaba and several other companies merited inclusion on the 1260H list.[1]

---

[1] *See* Anthony Capaccio, *Pentagon Cited Alibaba on China Military Aid in Oct. 7 Memo*, Bloomberg (Nov. 26, 2025), https://www.bloomberg.com/news/articles/2025-11-26/pentagon-cited-alibaba-on-china-military-aid-in-oct-7-letter.

8

COMPLAINT
CASE NO. 26-CV-6227

35.    On December 18, 2025, Members of Congress wrote to Secretary Hegseth applauding the reported October 7 memorandum and urging the Department to add Alibaba—which they asserted "aid[s] the PRC's military"—and several other companies to the 1260H List.[2]

36.    Because Section 1260H as amended imposes contracting limitations and other consequences on designated entities, and in light of the congressional letter, Alibaba wrote to Assistant Secretary Cadenazzi on December 24, 2025, requesting an opportunity to respond to the allegations against it.

37.    On January 21, 2026, Alibaba met with the Department and demonstrated that it does not qualify as a CMC. Among other things, Alibaba showed that:

  a.    **Alibaba's business is strictly civilian and commercial**. Alibaba does not manufacture for, or provide products or services to, the Chinese or U.S. militaries. Its products and services are built for retail, logistics, and enterprise-IT workloads—not for military, weapons, defense, or intelligence applications.

  b.    **Neither the PRC government nor PLA controls Alibaba.** Alibaba has a broad shareholder base and a board and governance structure with no government or PLA affiliation. MIIT, SASAC, and SASTIND neither manage nor direct the company. None of Alibaba's ten directors has any military background or affiliation.

  c.    **Alibaba holds no military certifications or licenses.** The company does not have the licenses required to supply military-grade products to the PLA, has never applied for any, and is not registered on any platform requiring such certifications.

  d.    **Alibaba receives no military-civil fusion funding.** The company receives no assistance for projects related to the PRC government's industrial-planning or

---

[2] *See* Letter from Rep. Moolenaar et al. to Sec. Hegseth, Dep't of Def. (Dec. 18, 2025), https://chinaselectcommittee.house.gov/sites/evo-subsites/selectcommitteeontheccp.house. gov/files/evo-media-document/12.18.25-letter-to-dow-1260h-additions.pdf.

9

COMPLAINT
CASE NO. 26-CV-6227

military-civil fusion efforts, and it is neither a "Single Champion" nor a "Little Giant."

e. **Alibaba has no affiliation with MIIT, SASAC, or the PLA.** The company conducts research and development independently and for commercial purposes, performs no joint R&D with the PRC government or the PLA, and ties none of its research to military-civil fusion objectives.

f. **Alibaba maintains a sophisticated compliance program.** The company's policies and controls, developed with international legal counsel, are designed to prevent military or military-civil fusion use of its products and services. Internal screening updates daily and issues alerts to block counterparties appearing on the U.S. Military End-User, Chinese Military Company, and non-SDN Chinese Military-Industrial Complex Company lists.

g. **Alibaba's standard contract terms forbid military use of its products and services.** For example, Alibaba Cloud's standard terms provide that customers "shall not use any products or services provided by Alibaba Cloud for military purposes or in connection with users or applications related to weapons of mass destruction."

38.    At the January 21, 2026 meeting, Alibaba asked for an opportunity to address any further questions or concerns the Department might have about its affiliations, operations, or potential 1260H status *before* any listing decision.

39.    On January 22, 2026—the day after the meeting—Alibaba provided the Department with its presentation slides and a third-party analysis of its economic contributions to the United States.

40.    On January 30, 2026, Alibaba followed up again, submitting additional evidence of its longstanding cooperation with, and assistance to, the United States government. For example, Alibaba provided the Department with a letter from the Director of the National Intellectual Property Rights Coordination Center (the "IPR Center"), a component of the U.S. Department of Homeland

COMPLAINT
CASE NO. 26-CV-6227

Security. The Director expressed appreciation for Alibaba's years of support for the IPR Center's efforts to combat intellectual-property theft and enforce trade laws, recognized the company's "dedication, professionalism, and overall leadership," thanked it for its "continual support and unwavering partnership," and expressed hope that the partnership would continue.

41.    Following these submissions, the Department did not raise any concern with Alibaba, request additional information, or otherwise engage further before publishing the designation.

**V.        The Department Designated Alibaba Without Notice or a Fair Hearing.**

42.    On February 13, 2026, at 8:45 a.m., the Department posted a revised 1260H List for public inspection that designated Alibaba as a CMC. It did so without prior notice to Alibaba and without any opportunity for the company to address the Department's still-undisclosed concerns. Approximately forty-five minutes later, the Department asked the Federal Register to withdraw the list from public inspection.

43.    The withdrawn list included the Secretary's determination that "Alibaba is indirectly affiliated with SASAC" and that "Alibaba is a military-civil fusion contributor to the Chinese defense industrial base because it is affiliated with MIIT."

44.    The withdrawn designation created significant negative press coverage.[3]

45.    On February 27, 2026, Alibaba asked the Department to provide the basis for the designation and again offered to address any specific concerns. The Department responded only that the February 13 list "may require updates based on the statutory requirement to review the most recent information available," that it "is consistently reviewing the most recent information available," and that it "will publish an updated list in accordance with the statute to make additions or deletions as the Secretary deems appropriate."

---

[3] *See, e.g.*, Edwin Chan, *Alibaba Leads Tech Slide After Pentagon Briefly Shows Blacklist*, Bloomberg (Feb. 15, 2026), https://www.bloomberg.com/news/articles/2026-02-16/alibaba-leads-tech-slide-after-pentagon-briefly-shows-blacklist; Michael Martina & Alexandra Alper, *US Withdraws Newly Updated List of Firms Allegedly Aiding China's Military*, Reuters (Feb. 13, 2026), https://www.reuters.com/sustainability/society-equity/us-expected-add-alibaba-others-list-firms-allegedly-aiding-chinas-military-2026-02-13/.

46. The Department never provided any further explanation or support for its withdrawn February 13 designation.

47. On March 24, 2026, Alibaba nonetheless submitted a substantive response to the determinations provided in the withdrawn list. Alibaba explained that it is a widely held, publicly traded company governed by an independent board, and that it is not affiliated with SASAC in any meaningful sense.

48. Alibaba further explained that its interactions with MIIT consist of routine regulatory compliance and ordinary industry-association participation—the same kind of activity undertaken by numerous U.S. and multinational technology companies operating in China—and that such interactions establish neither an "affiliation" with MIIT nor any basis to treat Alibaba as a military-civil fusion contributor.

49. Assistant Secretary Cadenazzi acknowledged receipt of this submission, but the Department provided no substantive response.

50. On June 8, 2026, the Department posted for public inspection another revised 1260H List, again designating Alibaba and reciting the same two cursory grounds without explaining the basis for the assertions. Two days later, the list was published in the Federal Register. *See* 91 Fed. Reg. 35,189 (June 10, 2026).

**VI.     The Department's Designation Is Erroneous and Inadequately Supported.**

51. Alibaba is not "indirectly affiliated with SASAC." 91 Fed. Reg. at 35,189 (citing Section 1260H(g)(2)(B)(i)(I)).

52. SASAC supervises state-owned assets of centrally administered enterprises and otherwise regulates Chinese SOEs.

53. Alibaba is not an SOE, and it is not owned, controlled, supervised by, or closely associated with any SOE. As explained above, Alibaba is a publicly traded company with a diverse shareholder base, governed by an independent board.

54. The Department has never explained how Alibaba is "indirectly affiliated with SASAC" within the meaning of Section 1260H(g)(2)(B)(i)(I). It has identified no SASAC-

controlled shareholder, no SASAC appointment right, and no SASAC involvement in Alibaba's governance or operations.

55.    Whatever attenuated connection the Department may perceive between Alibaba and SASAC, it is not the kind of "close formal or informal association" the statute requires. Reading "affiliated with" to reach so remote a connection would drain the term of any limiting principle. *Cf. Luokung Tech. Corp. v. Dep't of Def.*, 538 F. Supp. 3d 174, 187 (D.D.C. 2021); *Xiaomi Corp. v. Dep't of Def.*, 2021 WL 950144, at *6-7 (D.D.C. Mar. 12, 2021); *SZ DJI Tech. Co. v. Dep't of Def.*, 2025 WL 2761210, at *12-13 (D.D.C. Sept. 26, 2025). In doing so here, the Department has exceeded its statutory authority, and moreover, its decision finds no support in the administrative record.

56.    Alibaba is also not "a military-civil fusion contributor to the Chinese defense industrial base because it is affiliated with MIIT." 91 Fed. Reg. at 35,189 (citing Section 1260H(g)(3)(B)(i)).

57.    MIIT is one of the principal regulators of China's technology sector. Its ministerial responsibilities include oversight of the internet, wireless communications, telecommunications, broadcasting, software, and related information industries. MIIT formulates policies and technical standards, ensures compliance, oversees aspects of network and information security, and provides guidance on industry self-regulation.

58.    Like every other market participant operating in China—including many American companies—Alibaba must conduct its business within the regulatory framework that MIIT administers.

59.    By the same token, Alibaba conducts business in the United States within the frameworks administered by the Federal Communications Commission, the Federal Trade Commission, the Bureau of Industry and Security, and the Office of Foreign Assets Control. No one would say that those relationships make Alibaba "affiliated with" the U.S. government.

60.    A relationship between a regulator and the entity it regulates does not establish control, shared purpose, alignment of interests, or institutional association—and so cannot constitute the "close formal or informal association" the statute requires.

61.    The Department's reading of "affiliated with" to capture Alibaba's arm's-length, compliance-driven interactions with MIIT exceeds its statutory authority and finds no support in the administrative record.

62.    The Department has also not shown—and cannot show—that Alibaba contributes to the Chinese defense industrial base. Alibaba's products and services are designed, manufactured, and sold for civilian and commercial use only.

## VII.    Alibaba Has Suffered, and Will Continue to Suffer, Substantial Harm as a Result of Designation.

63.    The Department's unlawful designation has already injured Alibaba and, absent relief, will continue to inflict serious and compounding harm—much of it irreparable.

64.    The designation has caused reputational harm. Alibaba is a global technology company with partners, customers, and counterparties around the world, including throughout the United States. For many American businesses, Alibaba is the principal gateway to the Chinese market—the platform through which U.S. brands, from small businesses to multinationals, reach Chinese consumers, and the cloud provider on which U.S. companies operating in China rely. In 2024, U.S. brands generated billions of dollars in sales using Alibaba's infrastructure, supporting hundreds of thousands of American jobs.

65.    To label Alibaba a "Chinese military company" is to brand it an instrument of the Chinese military and a threat to U.S. national security. That designation—published in the Federal Register and broadcast in both English and Mandarin—directly impugns Alibaba's reputation and casts a shadow over every U.S. relationship the company maintains. Designated entities face strained partnerships, potential loss of business, and heightened compliance scrutiny from counterparties whose screening systems flag the 1260H List.

14
COMPLAINT
CASE NO. 26-CV-6227

66.    These harms are not speculative. When the Department posted, then minutes later withdrew, its February 13, 2026 designation of Alibaba, the temporary listing drew immediate and widespread press coverage—demonstrating the concrete reputational damage that the now-published designation inflicts in full.

67.    The designation has also contributed to negative investor sentiment regarding the company, as investors and potential investors have already raised concerns. It could also lead to an increase in Alibaba's borrowing costs. The G-spreads on Alibaba's notes, for example, widened by 6 and 12 basis points, respectively, around the temporary February 13 and the June 8 listing.

68.    The designation also triggers direct legal consequences that take effect imminently. Beginning June 30, 2026, the Department of Defense may not enter into, renew, or extend any contract to procure goods, services, or technology from a designated entity, and the prohibition extends to any entity controlled by a CMC. *See* Pub. L. No. 118-31, § 805(a)(1)(A), 137 Stat. 136, 315 (Dec. 22, 2023). On June 30, 2027, that procurement bar extends downward through the supply chain. *See id*. § 805(a)(1)(B). And the Department of Homeland Security is similarly subject to prohibitions on awarding procurement contracts to any entity on the 1260H List. Pub. L. No. 118-47, § 536, 138 Stat. 460, 622 (Mar. 23, 2024).

69.    Also beginning June 30, 2026, the Department of Defense may not contract with any entity—or that entity's parent or subsidiary—that is itself a party to a contract with a lobbyist who also engages in "lobbying activities" for a designated CMC. *See* Pub. L. No. 118-159, § 851, 138 Stat. 1995, 2010 (Dec. 23, 2024) (codified at 10 U.S.C. § 4663). The practical effect is to pressure Alibaba's U.S.-facing partners and advisors to sever ties with the company to preserve their own eligibility to contract with entities that contract with the government, which abridges Alibaba's right to speak and to petition the government. And in fact, that pressure has already resulted in several firms and lobbyists indicating that they will end their relationship with Alibaba due to the risks created by Section 4663.

70.    The designation may further cascade onto a web of other federal restrictions given that Congress and federal agencies increasingly use the 1260H List as a trigger for further

15
COMPLAINT
CASE NO. 26-CV-6227

consequences. For example, the FY2026 NDAA requires an annual review of other U.S. government lists to determine whether those lists should also include entities newly added to the 1260H List. *See* Pub. L. No. 119-60, §§ 845, 1263, 6703. Even without that formal review, a 1260H listing already informs Commerce Department Entity List actions under the Export Administration Regulations, can serve as a red flag for Military End-User status and the Non-SDN Chinese Military-Industrial Complex Companies List, and feeds into reviews by the Committee on Foreign Investment in the United States.

71.    The designation also exposes Alibaba to a growing body of state-level restrictions. A number of States maintain "scrutinized company" and divestment regimes that sweep in entities tied to or controlled by countries of concern, and that draw on federal designations in doing so. Texas, for example, requires state investing entities to divest the securities of companies controlled by or tied to China, and directed its comptroller to compile a scrutinized-company list. *See* Tex. Gov't Code § 2270 *et seq*. (as amended 2025). Other States and public pension systems maintain comparable divestment lists. A federal designation of Alibaba as a "Chinese military company" materially increases the likelihood that the company's securities—listed on the New York Stock Exchange—become subject to such state divestment mandates.

72.    The designation also invites further political and regulatory scrutiny. Indeed, it has already drawn, and will continue to draw, congressional and political demands targeting Alibaba and the businesses that work with it. Members of Congress have publicly characterized 1260H listees as companies "working with the Chinese military against our national interests," called for publicly traded listees to be "immediately delisted" from U.S. exchanges and their products "removed from supply chains," and urged American companies to "stop doing business with" them.[4]

---

[4] Rep. Moolenaar, Press Release, *American Companies & Governments Should Cut Ties With New Pentagon-Listed Chinese Military Companies* (June 8, 2026), https://chinaselectcommittee.house.gov/media/press-releases/moolenaar-american-companies-governments-should-cut-ties-with-new-pentagon-listed-chinese-military-companies.

Each such demand compounds the pressure on Alibaba's U.S. partnerships, magnifies the reputational and commercial injury the designation inflicts, and harms U.S. investors.

73.    The Chairman of the House Select Committee on China and the Chairwoman of the House Republican Leadership have urged "strict implementation" of Section 4663's lobbyist-contracting ban that "capture[s] U.S.-based subsidiaries of companies on the 1260H List" and requested a briefing on the Department's efforts to ensure defense contractors "cut all ties with firms and lobbyists that also lobby on behalf of companies on the 1260H List."[5]

74.    Taken together, these harms—constitutional, reputational, commercial, statutory, cross-regulatory, and political—are immediate, ongoing, and incapable of full repair through any later remedy. The designation's central injuries (infringement of constitutional rights, lost relationships, reputational harm, and the cascade of derivative restrictions) cannot be undone by eventual reconsideration, and the Department's post-listing reconsideration process offers no answer: it operates only after the consequences have attached and the harm has been done.

## CLAIMS FOR RELIEF

### COUNT I

**The Designation of Alibaba as a CMC**

**Violates the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (C), (E)**

**(Against All Defendants)**

75.    Alibaba realleges and incorporates by reference the allegations in paragraphs 1 to 74 above.

76.    Each Defendant is subject to the APA's requirements. 5 U.S.C. § 701(b)(1).

77.    Defendants' designation of Alibaba as a CMC constitutes final agency action that is reviewable under the APA. 5 U.S.C. § 704.

78.    Alibaba has no adequate or available administrative remedy; in the alternative, any effort to obtain an administrative remedy would be futile.

---

[5] Letter from Rep. Moolenaar and Rep. Stefanik to Sec. Hegseth (June 15, 2026), https://files.constantcontact.com/f0eecb46901/e043a242-94d7-4575-b777-f94cb8939ebe.pdf.

79.    The APA requires a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; (C) "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right"; and (E) "unsupported by substantial evidence." 5 U.S.C. § 706.

80.    Defendants' designation of Alibaba as a CMC violated 5 U.S.C. § 706(2) because Defendants (1) designated Alibaba on the basis of two conclusory "affiliation" findings—indirect SASAC affiliation and MIIT affiliation—without identifying the facts supporting either; (2) erroneously interpreted Section 1260H(g)(2)(B)(i)(I) to include a company's insubstantial and attenuated connections to the named PRC entities; (3) failed to investigate or develop a record adequate to support the designation; (4) failed to articulate any rational connection between the information before the Department and its conclusion; and (5) designated Alibaba although, on the facts, Alibaba does not satisfy the statutory definition of a Chinese military company under the identified subsections of Section 1260H(g).

81.    In particular, Defendants failed to consider important aspects of the problem and failed to respond to the substantial contrary evidence Alibaba placed before the Department— including about Alibaba's ownership structure, independent governance, absence of any military certification or licensing, and compliance controls. Having withdrawn the February 13, 2026 designation on the stated ground that it "may require updates based on the statutory requirement to review the most recent information available," Defendants then relisted Alibaba in June with the identical two-sentence justification, despite Alibaba's March 24 submission. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

82.    The designation is therefore arbitrary, capricious, an abuse of discretion, in excess of statutory authority, and unsupported by substantial evidence.

83.    Defendants' unlawful acts are causing and, without this Court's intervention, will continue to cause irreparable harm to Alibaba and third parties.

## COUNT II

### The Designation of Alibaba as a CMC

### Violates the Administrative Procedure Act, 5 U.S.C. § 706(2)(D)

### (Against All Defendants)

84. Alibaba realleges and incorporates by reference the allegations in paragraphs 1 to 78 above.

85. The APA requires a reviewing court to set aside agency action that is taken "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

86. Section 1260H(a) requires Defendants to identify CMCs and base their designation decisions "on the most recent information available." It also requires Defendants to submit to Congress "a list of each entity identified … to be a Chinese military company, in classified and unclassified forms," to include "a justification for adding any entities to the list and for deleting any entities from a prior list," to "consult with the head of any appropriate Federal department or agency in making the determinations," and to publish the unclassified list and justifications for adding any entities in the Federal Register. Section 1260H(b)–(c).

87. Defendants failed to observe the procedures that Section 1260H requires. Section 1260H, as amended, requires the Department to provide a written justification for any addition to the 1260H List. Defendants' published "justification" for Alibaba consisted of two conclusory sentences that identified no supporting facts and did not satisfy the statutory requirement of a genuine justification. Defendants further failed to base the designation "on the most recent information available" as Section 1260H(a) requires, having disregarded the current and comprehensive information Alibaba supplied, and failed to undertake the consultation the statute contemplates.

88. Defendants' unlawful acts are causing and, without this Court's intervention, will continue to cause irreparable harm to Alibaba and third parties.

19

COMPLAINT
CASE NO. 26-CV-6227

## COUNT III

### The Designation of Alibaba as a CMC

### Violates the Administrative Procedure Act, 5 U.S.C. § 706(2)(B)

### (Against All Defendants)

89.    Alibaba realleges and incorporates by reference the allegations in paragraphs 1 to 78 above.

90.    The APA requires a reviewing court to set aside agency action that is taken "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

91.    The Fifth Amendment provides that "[n]o person shall be … deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *see Villa-Anguiano v. Holder*, 727 F.3d 873, 881 (9th Cir. 2013).

92.    Alibaba Group Holding Limited has established substantial connections to the United States, including several U.S. subsidiaries; offices in New York, California, and Washington, D.C.; U.S.-based board members, executive management, and employees; and extensive business relationships with U.S. entities. Alibaba Group (U.S.) Inc. is a citizen of Delaware and California. Plaintiffs are therefore entitled to the protections of due process.

93.    The designation changes Alibaba's status vis-à-vis the U.S. government, brands it a CMC, impairs its right to current and future revenue from U.S. business partners, and burdens its relationships with U.S. suppliers, among other inflicted harms. The designation affects Alibaba's reputation, which—coupled with the procurement prohibition that takes effect June 30, 2026, and the cascade of derivative federal and state restrictions described above—deprives Alibaba of protected property and liberty interests. The designation's interference with Alibaba's ability to speak on issues of public concern and petition the government through chosen representatives, addressed more in Count IV, is a further deprivation.

20

COMPLAINT
CASE NO. 26-CV-6227

94.    Alibaba did not receive notice of the Department's basis for identifying Alibaba as a CMC before it was listed, nor did it receive a meaningful opportunity to be heard on the particular allegations prior to its designation. Nor has the Department provided a sufficient explanation for the designation or notice of the information on which the designation is based.

95.    The denial of pre-deprivation process is unjustified under these circumstances, and Defendants have deprived Alibaba of its rights under the Fifth Amendment. And the Defendants' failure to provide due process before the Department erroneously listed Alibaba has significantly prejudiced Plaintiffs.

96.    Defendants' unlawful acts are causing and, without this Court's intervention, will continue to cause irreparable harm to Alibaba and third parties.

**COUNT IV**

**10 U.S.C. § 4663 Violates the First Amendment**

**(Against All Defendants)**

97.    Alibaba realleges and incorporates by reference the allegations in paragraphs 1 to 78 above.

98.    The First Amendment provides that "Congress shall make no law … abridging the freedom of speech" or the right "to petition the Government for a redress of grievances." U.S. Const. amend. I.

99.    The Supreme Court has recognized that "the expression of a desire for political change and a discussion of the merits of the proposed change" is "core political speech." *Meyer v. Grant*, 486 U.S. 414, 421 (1988). So too are "discussions of candidates, structures and forms of government, the manner in which government is operated or should be operated, and all such matters relating to political processes." *Mills v. Alabama*, 384 U.S. 214, 218–19 (1966). "The right to petition is cut from the same cloth as the other guarantees of [the First] Amendment, and is an assurance of a particular freedom of expression." *McDonald v. Smith*, 472 U.S. 479, 482 (1985). Officials may be under no obligation "to listen or respond," *Minn. State Bd. of Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984), but "Congress has no power to ban lobbying itself," *Citizens*

21

COMPLAINT

CASE NO. 26-CV-6227

*United v. FEC*, 558 U.S. 310, 369 (2010). "Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association," and the "freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect" of the "freedom of speech." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958).

100.   Section 4663—facially and as applied to Alibaba—impermissibly burdens First Amendment rights to speak and to petition the government. By refusing to contract with any company that retains a lobbyist or lobbying firm that conducts lobbying activities on behalf of Alibaba, the Department effectively eliminates Alibaba's ability to retain advocates to engage with the government on Alibaba's behalf regarding proposed legislation, rules, regulations, or executive orders. That deprives Alibaba of its own ability to speak and petition the government through its chosen representatives and to associate with others for the advancement of its position. In fact, since the Department designated Alibaba as a CMC, advocates with whom Alibaba has worked for years have informed the company that they will no longer be able to represent Alibaba due to Section 4663.

101.   In addition, Section 4663 places unconstitutional conditions on those companies who bid on Department contracts by precluding their association with others who represent CMCs and, in turn, limiting their right to speak and to petition the government. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (The government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests," including the right to petition, in order "to produce a result which it could not command directly." (cleaned up)). And the statute impairs the lobbyists' First Amendment rights to speak, to petition the government, and to associate.

102.   The government cannot justify such restrictions on fundamental rights. Section 4663—as applied to Alibaba and, in the alternative, on its face—violates the First Amendment.

103.   Section 4663 is causing and, without this Court's intervention, will continue to cause irreparable harm to Alibaba and third parties.

## COUNT V

### Section 1260H Is Void for Vagueness as Applied to Alibaba

### or, in the Alternative, on Its Face

### (Against All Defendants)

104. Alibaba realleges and incorporates by reference the allegations in paragraphs 1 to 78 above.

105. As described above, Alibaba is entitled to due process. The Due Process Clause requires that a statute provide fair notice of conduct that is forbidden or required, and if the statute does not provide such notice, it is void for vagueness.

106. As an alternative to Count I, Section 1260H as amended is unconstitutionally vague. Specifically, the terms "directly or indirectly … affiliated with … SASAC" and "affiliated with … MIIT" do not provide fair notice, and the statute's definition of "affiliated with" to "mean[] in close formal or informal association" does not provide any greater clarity or remedy the constitutional defect.

107. These vague terms invite arbitrary and discriminatory enforcement. The vagueness is compounded by the structure of the military-civil-fusion definition, which is expressly non-exhaustive and culminates in a residual category authorizing the designation of "[a]ny other entit[y] the Secretary determines is appropriate," Section 1260H(g)(3)(H)—a standardless grant that provides no notice of what conduct triggers designation and that invites arbitrary enforcement.

108. Defendants' unlawful acts are causing and, without this Court's intervention, will continue to cause irreparable harm to Alibaba and third parties.

### REQUESTED RELIEF

Alibaba respectfully prays that this Court enter an order and judgment:

1.      Declaring that Defendants' designation of Alibaba as a CMC is null, void, and with no force and effect;

2.      Declaring that Defendants' designation of Alibaba as a CMC is not in accordance with law within the meaning of 5 U.S.C. § 706(2); in excess of statutory jurisdiction,

authority, or limitations within the meaning of 5 U.S.C. § 706(2); contrary to constitutional right within the meaning of 5 U.S.C. § 706(2); and unsupported by substantial evidence within the meaning of 5 U.S.C. § 706(2);

3. Declaring 10 U.S.C. § 4663 to be an unconstitutional abridgment of the freedom of speech and the right to petition the government;

4. Vacating and setting aside the designation of Alibaba as a CMC;

5. Compelling Defendants to delete Alibaba from the 1260H List;

6. Preliminarily and permanently enjoining Defendants and their officers, employees, and agents from enforcing, implementing, applying, or taking any action whatsoever under, or in reliance on, the designation of Alibaba as a CMC;

7. Postponing the effective date of the designation under 5 U.S.C. § 705;

8. Awarding Alibaba the costs of this litigation, including reasonable attorneys' fees; and

9. Granting Alibaba such other and further relief as the Court deems just and proper.

Respectfully submitted,

Date: June 23, 2026                    SIDLEY AUSTIN LLP

/s/ *Sheila A.G. Armbrust*
  Sheila A.G. Armbrust (CABN 265998)
  Carter G. Phillips (*pro hac vice forthcoming*)
  Jennifer J. Clark (*pro hac vice forthcoming*)
  Christopher A. Eiswerth (*pro hac vice forthcoming*)

*Attorneys for Plaintiffs Alibaba Group Holding Limited and Alibaba Group (U.S.) Inc*

24

COMPLAINT
CASE NO. 26-CV-6227