BRETT A. SHUMATE
Assistant Attorney General
KRISTINA WOLFE
Assistant Branch Director
J. STEPHEN TAGERT
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 305-5486
stephen.tagert@usdoj.gov
*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| ALIBABA GROUP HOLDING LIMITED; ALIBABA GROUP (U.S.) INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF DEFENSE a/k/a UNITED STATES DEPARTMENT OF WAR; PETE HEGSETH, in his official capacity as Secretary of War; STEPHEN FEINBERG, in his official capacity as Deputy Secretary of War; AND MICHAEL CADENAZZI, in his official capacity as Assistant Secretary of War for Industrial Base Policy, <br><br> *Defendants*. | Case No. 26-cv-6227-EKL <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** <br><br> Hearing Date & Time: To be determined (Week of August 31) <br> Before: Hon. Eumi K. Lee |

*Alibaba Group Holding Ltd., et al. v. U.S. Department of War, et al.*, 26-cv-6227-EKL – Opposition to Motion for Temporary Restraining Order and Preliminary Injunction

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................... 1

BACKGROUND ........................................................................................................................ 3

    I.   Statutory Background ................................................................................................. 3

    II.  This Litigation............................................................................................................. 4

LEGAL STANDARD................................................................................................................. 5

ARGUMENT ............................................................................................................................. 5

    I.   Plaintiffs Are Unlikely to Succeed on the Merits ..................................................... 5

        A.  Section 4663 Does Not Trigger First Amendment Scrutiny....................................... 5

        B.  If Anything, Section 4663 Warrants Only Intermediate Scrutiny............................... 12

        C.  Even if Strict Scrutiny Applies, Section 4663 Is Narrowly Tailored to Further Compelling National-Security Interests. ..................................................... 17

        D.  Alibaba's Facial Challenge Is Even More Tenuous, and the Court Should Defer Ruling on It. ..................................................................................... 19

    II.  Alibaba Fails to Demonstrate Irreparable Harm ...................................................... 20

    III. The Balance of the Equities Favors Denying the Motion........................................ 22

    IV. Any Injunctive Relief Should Be Narrowly Tailored ............................................. 25

    V.  Any Injunctive Relief Should Be Accompanied by a Bond. ................................... 25

CONCLUSION.......................................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
 570 U.S. 205 (2013).................................................................................................. 6

*Americans for Prosperity Found. v. Bonta*,
 594 U.S. 595 (2021)................................................................................................ 20

*Arcara v. Cloud Books, Inc.*,
 478 U.S. 697 (1986)........................................................................................ 8, 9, 13

*Baird v. Bonta*,
 81 F.4th 1036 (9th Cir. 2023) ................................................................................. 20

*Burwell v. Hobby Lobby Stores, Inc.*,
 573 U.S. 682 (2014)........................................................................................... 17, 18

*Caribbean Marine Servs. Co., Inc. v. Baldrige*,
 844 F.2d 668 (9th Cir. 1988) .................................................................................. 21

*Chiles v. Salazar*,
 146 S. Ct. 1010 (2026).............................................................................................. 6

*Citizens United v. Fed. Election Comm'n*,
 558 U.S. 310 (2010)........................................................................................... 16, 17

*City of Austin v. Reagan National Advertising of Austin, LLC*,
 596 U.S. 61 (2022).................................................................................................. 14

*Marshall v. Baltimore & Ohio. Railroad Company*,
 57 U.S. 314 (1853).................................................................................................. 12

*DISH Network Corp. v. FCC*,
 653 F.3d 771 (9th Cir. 2011) .................................................................................. 21

*Earth Island Inst. v. Carlton*,
 626 F.3d 462 (9th Cir. 2010) .................................................................................. 21

*Elrod v. Burns*,
 427 U.S. 347 (1976)................................................................................................ 21

*Federated Indians of Graton Rancheria v. Haaland*,
 762 F. Supp. 3d 888 (N.D. Cal. 2025) .................................................................... 21

*First Choice Women's Resource Centers, Inc. v. Davenport*,
 46 S. Ct. 1114 (2026)................................................................................................ 9

*Gilligan v. Morgan,*
   413 U.S. 1 (1973) ................................................................................................................ 24

*Goldman v. Weinberger,*
   475 U.S. 503 (1986) ............................................................................................................ 24

*Holder v. Humanitarian L. Project,*
   561 U.S. 1 (2010) .......................................................................................................... 19, 24

*Immigrant Defs. L. Ctr. v. Noem,*
   145 F.4th 972 (9th Cir. 2025) ......................................................................................... 5, 22

*In re Excel Innovations, Inc.,*
   502 F.3d 1086 (9th Cir. 2007) ............................................................................................ 21

*Klein v. City of San Clemente,*
   584 F.3d 1196 (9th Cir. 2009) ............................................................................................ 23

*Los Angeles Police Dep't v. United Reporting Pub. Corp.,*
   528 U.S. 32 (1999) .............................................................................................................. 20

*McDonald v. Smith,*
   472 U.S. 479 (1985) .............................................................................................................. 6

*Members of City Council of City of Los Angeles v. Taxpayers for Vincent,*
   466 U.S. 789 (1984) ......................................................................................................... 9, 16

*Meyer v. Grant,*
   486 U.S. 414 (1988) ....................................................................................................... 10, 11

*Miller v. Ziegler,*
   109 F.4th 1045 (8th Cir. 2024) ........................................................................................... 11

*Mills v. Alabama,*
   384 U.S. 214 (1966) .............................................................................................................. 6

*Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue,*
   460 U.S. 575 (1983) .............................................................................................................. 8

*Moody v. NetChoice, LLC,*
   603 U.S. 707 (2024) ....................................................................................................... 19, 20

*NAACP v. Button,*
   371 U.S. 415 (1963) ............................................................................................................ 10

*NAACP v. Patterson,*
   357 U.S. 449 (1958) .......................................................................................................... 9, 10

*Alibaba Group Holding Ltd., et al. v. U.S. Department of War, et al., 26-cv-6227-EKL – Opposition to Motion for Temporary Restraining Order and Preliminary Injunction*

*National Rifle Association of America v. Vullo*,
   602 U.S. 175 (2024) ........................................................................................ 11, 12

*Nat'l Treasury Emps. Union v. Trump*,
   No. 25-5157, 2025 WL 1441563 (D.C. Cir. May 16, 2025) ..................................... 25

*Nken v. Holder*,
   556 U.S. 418 (2009)............................................................................................ 5, 22

*Nunez by Nunez v. City of San Diego*,
   114 F.3d 935 (9th Cir. 1997) ................................................................................... 20

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2025)................................................................................................... 14

*Roulette v. City of Seattle*,
   97 F.3d 300 (9th Cir. 1996) ...................................................................................... 20

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*,
   547 U.S. 47 (2006)............................................................................... 9, 10, 13, 15

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011).................................................................................................. 16

*Starbucks Corp. v. McKinney*,
   602 U.S. 339 (2024)..................................................................................................... 5

*TikTok Inc. v. Garland*,
   604 U.S. 56 (2025).......................................................................................... *passim*

*Trump v. CASA, Inc.*,
   606 U.S. 831 (2025)............................................................................................ 24, 25

*Trump v. Int'l Refugee Assistance Project*,
   582 U.S. 571 (2017)................................................................................................. 24

*Turner Broad. Sys., Inc. v. FCC*,
   512 U.S. 622 (1994)............................................................................................ 14, 15

*Turner Broad. Sys., Inc. v. FCC*,
   520 U.S. 180 (1997)................................................................................................. 15

*United States v. O'Brien*,
   391 U.S. 367 (1968)................................................................................................. 15

*United States v. Rumely*,
   345 U.S. 41 (1953)................................................................................................... 10

*Ward v. Rock Against Racism*,
   491 U.S. 781 (1989)................................................................................................. 14, 15

*Williams-Yulee v. Florida Bar*,
   575 U.S. 433 (2015)....................................................................................................... 17

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008)................................................................................... 5, 21, 22, 24

*Wooley v. Maynard*,
   430 U.S. 705 (1977)......................................................................................................... 6

*Zemel v. Rusk*,
   381 U.S. 1 (1965).............................................................................................................. 19

**Statutes**

10 U.S.C. § 113 ............................................................................................................. 1, 3, 4

10 U.S.C. note prec. § 4651 ..................................................................................... 23

10 U.S.C. § 4663(a) ............................................................................................. *passim*

**Legislative Materials**

National Defense Authorization Act for Fiscal Year 2024,
   Pub. L. No. 118-31, § 805, 137 Stat. 315 ................................................................. 23

National Defense Authorization Act for Fiscal Year 2026,
   Pub. L. No. 119–60, § 1346, 139 Stat. 718 (Dec. 18, 2025) ........................................ 1

Servicemember Quality of Life Improvement and National Defense Authorization Act for Fiscal
   Year 2025, Pub. L. No. 118–159, 138 Stat. 1773 (Dec. 23, 2024)................................... 1, 3, 23

William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021,
   Pub. L. No. 116-283, § 1260H, 134 Stat. 3388 (Jan 1, 2021) ....................................... 1, 3, 4, 7

**Rule**

Fed. R. Civ. P. 65(c) ............................................................................................................ 25

**Other Authorities**

1 Annals of Cong. 738 (1789)........................................................................................... 6

1 Smolla & Nimmer on Freedom of Speech § 8:33.21.................................................... 8

70 Cong. Rec. H6639 (daily ed. Dec. 10, 2024),
    https://www.congress.gov/118/crec/2024/12/10/170/183/CREC-2024-12-10-pt1-PgH6596
    .pdf ........................................................................................................................................ 14

Jeffrey M. Shaman, *Rules of General Applicability*,
    10 First Amend. L. Rev. 419 (2012) ................................................................................... 8

Michael C. Dorf, *Incidental Burdens on Fundamental Rights*,
    109 Harv. L. Rev. 1175 (1996) ........................................................................................... 8

**PRELIMINARY STATEMENT**

Plaintiffs Alibaba Group Holding Limited and Alibaba Group (U.S.) Inc. (collectively "Alibaba") bring this lawsuit challenging the Department of War's determination that Alibaba Group Holding Limited is a Chinese military company pursuant to William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021.[1] Thus far, Alibaba's presentation of the facts is incomplete, as it suggests that the Department made the determination because Alibaba has a relationship with the Chinese Ministry of Industry and Information Technology ("MIIT") that "is nothing more than the ordinary relationship between a regulator and a regulated party that every technology company operating in China has with that ministry," Pls.' Motion for a Temp. Restraining Order and Preliminary Injunction ("PI Motion"), at 6, ECF No. 20, while highlighting various facts related to its corporate structure. *See id.* at 4-6. Defendants are working expeditiously to produce an administrative record to explain why this story is not accurate, but for purposes of the PI Motion, those facts are not material.[2]

This motion is about 10 U.S.C. § 4663 ("Section 4663). Section 4663 is a procurement ban that prohibits the Department of War ("DoW" or the "Department") from contracting with an entity that is a party to a contract with a covered lobbyist, *i.e.*, a lobbyist who engages in "lobbying activities for any entity determined to be a Chinese military company." 10 U.S.C. § 4663(a), (d)(1). Section 4663 does not prevent a covered lobbyist from engaging in lobbying activities for Chinese military companies and defense contractors. Both current and potential defense contractors and lobbying firms can contract with whomever they please, including companies designated as Chinese military companies, but defense contractors run the risk that

---

[1] Pub. L. No. 116-283, 134 Stat. 3388, 3965, §§ 1260H(g)(2)(B) and (g)(3)(B)(i) (Jan 1, 2021), as amended by Pub. L. No. 118–159, div. A, title XIII, § 1346, Dec. 23, 2024, 138 Stat. 2123; Pub. L. No. 119–60, 139 Stat. 718 div. A, title XII, §§ 1262(a), 1263, Dec. 18, 2025, 139 Stat. 1118, 1119 (codified as amended at 10 U.S.C. § 113, note).

[2] Following the filing of the PI Motion, Defendants provided Plaintiffs' counsel with a copy of the report created when making that determination.

1

*Alibaba Group Holding Ltd., et al. v. U.S. Department of War, et al.*, 26-cv-6227-EKL – Opposition to Motion for Temporary Restraining Order and Preliminary Injunction

the Department will not contract with them if these contractors also have a contract with a covered lobbyist and the Department does not waive Section 4663's requirements.

That procurement ban does not implicate the First Amendment. Indeed, Alibaba is free to speak directly to Congress, the President, and regulators; it can contract with any lobbying firm it chooses; and it can also hire employees—or start its own lobbying firm—for that very purpose. Alibaba's argument is that this bar—which is meant to separate the Department from Chinese military companies—contradicts the First Amendment because the Constitution guarantees it a right to lobbying firms of its choosing. That novel argument is unsupported by the case law, and the Court should deny Alibaba's motion for a preliminary injunction on that basis alone.

But even if the Court were to find that the First Amendment is implicated and that either intermediate or strict scrutiny applied, Defendants can meet either test. This restriction satisfies intermediate scrutiny because Section 4663 serves the government's substantial interest in ensuring that DoW's sensitive information does not fall into the hands of Chinese military companies via the companies' relationships with lobbyists and because multiple avenues of communication remain for Alibaba to speak in the United States. And the restriction also satisfies strict scrutiny because the government has a compelling interest in preventing Chinese military companies from accessing sensitive information about DoW through relationships with lobbyists. Section 4663 is also the least restrictive means of furthering that compelling interest, as it prohibits the Secretary of War from entering into contracts with entities who are parties to contracts with covered lobbyists who also work for Chinese military companies without preventing any other lobbyists from contracting with those companies.

Finally, the other preliminary injunction factors favor the government. Alibaba fails to establish irreparable harm because it has not demonstrated a likelihood of success on its First Amendment claim. And any harm Alibaba may have suffered is not irreparable as Alibaba can continue to advocate on its own behalf before any government body and may retain other lobbyists that do not represent a company who has a relationship with DoW. Further, Alibaba does not allege any harm—other than a *per se* First Amendment harm—arising from the alleged

2

deprivation of its rights. The balance of equities also tips strongly in the government's favor as the Section 4663 prohibition serves an important national security interest.

BACKGROUND

### I.    Statutory Background

The statute at issue in this Motion does not directly regulate Alibaba or any Chinese military company. Instead, Section 4663—which was enacted as part of the Servicemember Quality of Life Improvement and National Defense Authorization Act for Fiscal Year 2025, Pub. L. No. 118-159, 138 Stat. 1773 (Dec. 23, 2024)—prohibits DoW from "enter[ing] into a contract with an entity, a parent company of such entity, or a subsidiary of such entity if such entity is a party to a contract with a covered lobbyist." 10 U.S.C. § 4663(a). A "covered lobbyist" is defined as "any entity determined to be a Chinese military company listed in accordance with section 1260H of the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021." *Id.* § 4663(d)(1). And "[t]he term 'lobbying activities' has the meaning given in section 1045(c) of the National Defense Authorization Act for Fiscal Year 2018." *Id.* § 4663(d)(2). The Secretary may waive the requirements of Section 4663 "[u]pon notification to Congress." *Id.* § 4663(c).

Section 1260H of the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, directs DoW to "identify each entity the Secretary determines, based on the most recent information available, is operating directly or indirectly in the United States or any of its territories and possessions, that is a Chinese military company." Pub. L. No. 116-283 § 1260H(a), 134 Stat. 3388, 3965 (codified as amended at 10 U.S.C. § 113 note).[3] Under Section 1260H, the Department may identify an entity as a "Chinese military company" if the entity meets two criteria. First, the entity must be either (i) directly or indirectly owned or controlled by the Chinese military or other state entities listed in the statute; or (ii) "identified as a military-civil

---

[3] Unless otherwise noted, all citations to Section 1260H refer to the current amended version codified at 10 U.S.C. § 113 note.

3

*Alibaba Group Holding Ltd., et al. v. U.S. Department of War, et al.*, 26-cv-6227-EKL – Opposition to Motion for Temporary Restraining Order and Preliminary Injunction

fusion contributor to the Chinese defense industrial base." § 1260H(g)(2)(B)(i). Second, the entity must be "engaged in providing commercial services, manufacturing, producing, or exporting." *Id.* § 1260H(g)(2)(B)(ii).

Section 1260H defines which entities qualify as military-civil fusion contributors. *Id.* § 1260H(d)(2)(A)-(H). In relevant part, Section 1260H defines a military-civil fusion contributor to include "[e]ntities managed, overseen, or supervised by, otherwise under the control of, or affiliated with . . . the Chinese Ministry of Industry and Information Technology (MIIT)." among other organizations of the Chinese government. § 1260H(g)(3)(B).

The Secretary of War is required to publish the list of entities designated as "Chinese military companies" annually in the Federal Register (*i.e.*, the "1260H List"). *See* 134 Stat. at 3965, 10 U.S.C. § 113 note ("Public Reporting of Chinese Military Companies Operating in the United States"). Beginning on June 30, 2026, once a company is included on the 1260H List, the prohibition in Section 4663 becomes applicable.[4]

## II.    This Litigation

Alibaba filed this lawsuit on June 23, 2026, alleging five claims relating to its designation as a Chinese military company. *See* Compl., ¶¶ 75-96, ECF No. 1 (Counts I, II, and III, alleging violations of the APA), *id.* ¶¶ 97-103 (Count IV, alleging that 10 U.S.C. § 4663 violates the First Amendment), *id.* ¶¶ 104-08 (Count V, alleging that Section 1260H is void for vagueness). Alibaba filed its Motion for a Temporary Restraining Order and a Preliminary Injunction relating only to Count IV. *See generally* PI Motion.

The Motion recognizes that there is no direct ban on any of Alibaba's speech. Instead, Alibaba argues that "[t]he statute works by indirection." PI Motion at 1. And even though Alibaba retains the ability to employ its own lobbyists, speak however it wishes, and contract with any

---

[4] Placement on the 1260H List carries with it several other statutory restrictions that are not relevant to this Motion. *See, e.g.*, § 1260H(d) (procurement ban).

4

*Alibaba Group Holding Ltd., et al. v. U.S. Department of War, et al.*, 26-cv-6227-EKL – Opposition to Motion for Temporary Restraining Order and Preliminary Injunction

lobbying firm, Alibaba argues that it has "los[t] [] its voice across the whole of its dealings with the federal government." *Id.*

## LEGAL STANDARD

Emergency relief, such as a preliminary injunction, is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Alibaba must make a clear showing that (1) it is "likely to succeed on the merits," (2) it is "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [its] favor," and (4) "an injunction is in the public interest." *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) (quoting *Winter*, 555 U.S. at 20). The final two factors merge when the government is a party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Under the Ninth Circuit's "'sliding scale' variant of the *Winter* standard, 'if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 986 (9th Cir. 2025) (citation omitted).

## ARGUMENT

### I.    Plaintiffs Are Unlikely to Succeed on the Merits

Alibaba has not demonstrated that it is likely to succeed on the merits of its First Amendment claim, nor even that there are serious questions going to the merits. The Court should thus deny the Motion on that basis alone.

### A.    Section 4663 Does Not Trigger First Amendment Scrutiny.

Alibaba skims over the key issue presented by its Motion: whether the First Amendment is implicated when a private entity may continue speaking, including through lobbyists, but may no longer hire its preferred lobbying firm. The answer is no, and the Court should deny the PI Motion on this basis alone.

1. Section 4663 does not cover any conduct protected by the First Amendment. The First Amendment guarantees that "Congress shall make no law . . . abridging the freedom of speech, or

5

of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. Among other protections, these clauses "protect the free discussion of governmental affairs," *Mills v. Alabama*, 384 U.S. 214, 218 (1966); prevent the government from "compelling [regulated entities] to speak the State's message," *Chiles v. Salazar*, 146 S. Ct. 1010, 1022 (2026); and assure that "people 'may communicate their will' through direct petitions to the legislature and government officials." *McDonald v. Smith*, 472 U.S. 479, 482 (1985) (quoting 1 Annals of Cong. 738 (1789)). In other words, the First Amendment protects "both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977); *see also Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 213 (2013) (it is "a basic First Amendment principle that freedom of speech prohibits the government from telling people what they must say" (citation omitted)).

Not all laws touching on these protections, however, "trigger" First Amendment scrutiny. *TikTok Inc. v. Garland*, 604 U.S. 56, 67 (2025). First Amendment scrutiny applies only in three categories of cases: (1) when the "[l]aw[] [] directly regulate[s] expressive conduct"; (2) when a "case[] involv[es] governmental regulation of conduct that has an expressive element"; and (3) when there is "some statute[] which, although directed at activity with no expressive component, impose[s] a disproportionate burden upon those engaged in protected First Amendment activities." *Id.* at 67-68.

Here, Section 4663 does not trigger First Amendment scrutiny. Section 4663 does not directly regulate expressive conduct or conduct that has an expressive element as it does nothing to prevent Alibaba from speaking. Nor does it coerce the company to make any statements. Alibaba does not contend otherwise, *See, e.g.*, PI Motion at 1 ("The statute works by indirection."); *id.* at 4 ("The mechanism is indirect . . . ."). Instead, Alibaba argues that Section 4663 falls within the third category because it "burden[s]" the company's ability to lobby the government by "barring the Department from contracting with any entity that retains a lobbying firm representing [it]." *Id.* at 13-14. But Section 4663 is "in many ways different in kind from the regulations of non-

*Alibaba Group Holding Ltd., et al. v. U.S. Department of War, et al.*, 26-cv-6227-EKL – Opposition to Motion for Temporary Restraining Order and Preliminary Injunction

expressive activity that [the Supreme Court] ha[s] subjected to First Amendment scrutiny." *TikTok*, 604 U.S. at 69.

In *TikTok*—which Alibaba does not cite—the Supreme Court addressed a similar statute and expressed doubt that "a law targeting a foreign adversary's control over a communications platform" was like "the regulations of non-expressive activity that [the Court] ha[s] subjected to First Amendment scrutiny." 604 U.S. at 69. In so doing, the Court observed several key differences: "the Act's focus on a foreign government, the congressionally determined adversary relationship between that foreign government and the United States, and the causal steps between the regulations and the alleged burden on protected speech." *Id.* Although the Court ended up "assum[ing] without deciding that the challenged provisions . . . are subject to First Amendment scrutiny" because the law functioned as "an effective ban on a social media platform with 170 million U.S. users," *id.*, those guideposts still signal that the Supreme Court doubted that First Amendment scrutiny should apply at all.

Application of these considerations to Section 4663 demonstrates that the provision is not the type of "regulation of non-expressive activity," the Court has subjected to First Amendment scrutiny. *Id.* Like the statute at issue in *TikTok*, Section 4663 is "focus[ed] on a foreign government" that Congress has determined is in an "adversary relationship" with the United States. *Id.* Specifically, the statute is aimed at preventing access to DoW's sensitive information by entities that "engage[] in lobbying activities" for companies that DoW has determined, pursuant to Section 1260H, to be Chinese military companies. 10 U.S.C. §§ 4663(a), (d)(1). As relevant here, the designation of Chinese military companies concerns companies that are either directly or indirectly affiliated with certain organizations within the Chinese government or are military-civil fusion contributors to the Chinese defense industrial base that are managed, overseen, or supervised by, otherwise under the control of, or affiliated" the MIIT, among other organizations of the Chinese government. § 1260H(g)(3)(B)(i).

There are also several "causal steps between the regulations and the alleged burden on protected speech," *TikTok*, 604 U.S. at 69, which make the impact of the statute even more indirect

7

and thus insufficient to trigger First Amendment scrutiny under *TikTok*. These steps include: (1) a third-party entity must have a contract with DoW; (2) that entity must also have a contract with a lobbying firm; (3) the same lobbying firm must have a contract with a Chinese military company; (4) that lobbying firm must make an independent decision to discontinue its relationship with a Chinese military company; (5) the Chinese military company must not be able to find any lobbying firm to speak for it, and (6) the Chinese military company must not otherwise be able to speak to the government. And while the *TikTok* Court assumed without deciding that the challenged statute was subject to First Amendment scrutiny, it was, as noted above, undisputed that the statute effectively banned the social media platform. *Id.* at 69. That is not the case here. Section 4663 does not effectively ban Alibaba or any lobbying firm from petitioning the government either directly or through an obtained advocate. *See* 10 U.S.C. § 4663(a), (d)(1).

Although the *TikTok* Court did not explicitly say which cases the Supreme Court struck down a law based on its "disproportionate burden" on First Amendment activities, its prior opinion in *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 703-04 (1986), and treatises consistently point to one case: *Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue*, 460 U.S. 575 (1983).[5] This case is wholly unlike *Minneapolis Star*, where a state enacted a proposed tax on newsprint and ink that "single[d] out the press" for the proffered reason of "raising [] revenue," which suggested that the real purpose was "to suppress[] [] expression." 460 U.S. at 585-86. The proposed tax thus presented "too great a threat to concerns at the heart of the First Amendment" that could not be "tolerate[d]." *Id.* at 590. The *Arcara* Court clarified *Minneapolis Star* further, stating that the tax violated the First Amendment because it "inevitably fell disproportionately— in fact, almost exclusively—upon the shoulders of newspapers exercising the constitutionally protected freedom of the press," and that this holding made clear that "neither the press nor

---

[5] *See, e.g.*, *Arcara*, 478 U.S. at 704-06 (discussing *Minneapolis Star*); 1 Smolla & Nimmer on Freedom of Speech § 8:33.21 n.40 (citing *Arcara* and *Minneapolis Star*); Jeffrey M. Shaman, *Rules of General Applicability*, 10 First Amend. L. Rev. 419, 432 (2012) (same); Michael C. Dorf, *Incidental Burdens on Fundamental Rights*, 109 Harv. L. Rev. 1175, 1205 (1996) (same).

*Alibaba Group Holding Ltd., et al. v. U.S. Department of War, et al.*, 26-cv-6227-EKL – Opposition to Motion for Temporary Restraining Order and Preliminary Injunction

booksellers may claim special protection from governmental regulations of general applicability simply by virtue of their First Amendment protected activities." *Arcara*, 478 U.S. at 704-05. Unlike the proposed tax in *Minnesota Star*, Section 4663 does not impose a burden on any entity simply by virtue of First Amendment protected activities as Alibaba can continue to speak and hire lobbyists without any penalty, unlike the newspaper that had to pay the taxes to continue operating.

2. Alibaba argues that the First Amendment guarantees a right to "*effective*[]" speech—not to speech itself—and that Section 4663 "stifle[s]" its ability to "effectively" engage in "core political speech and . . . [to] petition the government" with respect to "legislation, rules, regulations, executive orders, or federal policies" because it deprives the company of its chosen advocates. *See* PI Motion at 11-12 ("[T]he First Amendment secures not only the freedom to speak and to petition, but also the freedom to do so *effectively*—through advocates of one's own choosing—and it does so most insistently when the speaker seeks to contest the government's own action against it." (emphasis added)). But that is incorrect, and Alibaba's argument does not trigger scrutiny under the First Amendment.

"[T]he First Amendment does not guarantee the right to employ every conceivable method of communication at all times and in all places." *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 812 (1984). And the cases cited by Plaintiffs relate to associational rights—sometimes described as "a right of expressive association" or the "right to associate for the purpose of speaking," *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 68 (2006)—rather than petitioning the government via preferred lobbyists or other consultants. *See* PI Motion at 10-11. For example, *NAACP v. Patterson* involved a State's attempt to examine membership lists of an association, which the Supreme Court held was impermissible because the effect was "possible unconstitutional intimidation of the free exercise of the right to advocate." 357 U.S. 449, 460-61 (1958). Similarly, *First Choice Women's Resource Centers, Inc. v. Davenport* involved a government's subpoena for donor lists which would "discourage people from associating with groups engaged in protected First Amendment advocacy." 46 S. Ct. 1114, 1125 (2026) (quotation modified) (citing *Patterson*, 357 U.S. at 460-

9

63). And *NAACP v. Button* said that "there is no longer any doubt that the First and Fourteenth Amendments protect certain forms of orderly group activity," which is why the Court "affirmed the right 'to engage in association for the advancement of beliefs and ideas.'" 371 U.S. 415, 430 (1963) (quoting *Patterson*, 357 U.S. at 460). None relates to a corporation being able to hire any consultant it chooses to articulate its interests to the government; instead, all fit comfortably within the recognized right to associate with others for the purposes of speaking. *See Rumsfeld*, 547 U.S. at 68.

To be sure, the Supreme Court has indicated that the First Amendment applies to certain situations involving lobbyists and persons paid to advocate for governmental change, but all those cases involved laws that *directly* touched on political speech. For example, in *United States v. Rumely*, the Court affirmed a court of appeals' reversal of a conviction of a person who refused to provide the names of individuals "who made bulk purchases" of "books of a particular political tendentiousness," by giving a statute requiring disclosure of "lobbying activities" a "more restricted scope" in order to "avoid[] a serious constitutional doubt" about the application of the First Amendment as a contrary view could allow the government "the power to inquire into all efforts of private individuals to influence public opinion." 345 U.S. 41, 42, 46-48 (1953). No such disclosure is required here, and Section 4663 does not interfere with the ability of anyone to speak. Further, although the Court was not specific about what First Amendment interest was involved in *Rumely*, it is best read as one preventing compelled disclosure to preserve the freedom of association. As the Court stated in *Patterson*, "[i]nviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs." 357 U.S. at 462 (citing *Rumely*, 345 U.S. at 56-58 (Douglas, J., concurring)).

Alibaba's reliance on *Meyer v. Grant* is also misplaced. There, the Court addressed the constitutionality of a law that prevented paying petition circulators who would work to obtain enough signatures to have a proposal placed on a ballot. 486 U.S. 414, 415-16 (1988). The law was held unconstitutional because "[t]he circulation of an initiative petition of necessity involves

10

both the expression of a desire for political change and a discussion of the merits of the proposed change" and thus "involves the type of interactive communication concerning political change that is appropriately described as core political speech." *Id.* at 421-22. The Court's statement that the First Amendment protected the affected persons' "right not only to advocate their cause but also to select what they believe to be the most effective means for so doing," *id.* at 424, related to a statute's foreclosure of a means of communication altogether, not to the right to have any specific person speak on another's behalf. In contrast, here, Alibaba can still directly petition the government for change and hire lobbyists, and there is no First Amendment problem presented by requiring certain lobbyists to choose not to do work with Alibaba because of the designation. Similarly, in *Miller v. Ziegler*, the Eighth Circuit relied on *Meyer* to find that a person's speech was burdened because he could not hire a lobbyist who was outright banned from serving as a lobbyist for two years "[r]egardless of how many regulatory hoops [two lobbyists] were willing to jump through." *See* 109 F.4th 1045, 1049-50 (8th Cir. 2024). Strict scrutiny applied because the case involved two-year outright ban prohibiting all lobbying activity by former members of the legislature. *See id.* at 1050 ("Bans like this one are subject to strict scrutiny."). Here, by contrast, nothing prevents Alibaba from making any type of political speech—the only limitation Alibaba alleges is that its previously preferred lobbyists made independent decisions to not represent Alibaba because they also represented a DoW contractor. *See* PI Motion at 12.

Likewise, Alibaba's citation to *National Rifle Association of America v. Vullo*, is of no help to it. *See* PI Motion at 13-14. In *Vullo*, a state government official "pressured regulated entities to help her stifle the NRA's pro-gun advocacy by threatening enforcement actions against those entities that refused to disassociate from the NRA and other gun-promotion advocacy groups." 602 U.S. 175, 180-81 (2024). The Court held that the official violated the First Amendment because she could not "use the power of the State to punish or suppress disfavored expression," particularly because "viewpoint discrimination is uniquely harmful to a free and democratic society." *Id.* at 187-88. The Court's key holding was that "a government official cannot do indirectly what she is barred from doing directly: A government official cannot coerce a private party to punish or

11

*Alibaba Group Holding Ltd., et al. v. U.S. Department of War, et al.*, 26-cv-6227-EKL – Opposition to Motion for Temporary Restraining Order and Preliminary Injunction

suppress disfavored speech on her behalf." *Id.* at 190; *see id.* at 198 ("[T]he critical takeaway is that the First Amendment prohibits government officials from wielding their power selectively to punish or suppress speech, directly or (as alleged here) through private intermediaries."). But that holding is limited to a threat to speech: "[t]o state a claim that the government violated the First Amendment through coercion of a third party, a plaintiff must plausibly allege conduct that, viewed in context, could be reasonably understood to convey a threat of adverse government action in order to punish or suppress the plaintiff 's speech." *Id.* at 191. *Vullo* thus does not apply here because there are no allegations that Defendants acted to try to punish Alibaba for its speech or to suppress that speech in any way, and there are no allegations that any private party attempted to punish Alibaba for its speech.

Finally, this case is wholly unlike *Marshall v. Baltimore & Ohio. Railroad Company*, 57 U.S. 314 (1853), which Alibaba cites for the proposition that a person may use a lobbyist or counsel of choice to advocate to legislative committees or courts of justice. *See* PI Motion at 10-11. But *Marshall* does not mention the First Amendment at all. Rather, the Court held that a lobbying contract was void as a matter of public policy when the lobbyist acted as a secret agent for a corporation because the agent was "practising deceit on the legislature," and such "attempts to deceive persons entrusted with the high functions of legislation, by secret combinations, or to create or bring into operation undue influences of any kind, ha[d] all the injurious effects of a direct fraud on the public." 57 U.S. 314, 334-35 (1853). The Court's reasoning thus does not support the argument that a corporation is entitled to any representative it wants—instead, the opposite is true and certain types of lobbyist contractual relationships may not be allowed when it would be injurious to the public.

### B.    If Anything, Section 4663 Warrants Only Intermediate Scrutiny.

Even if Section 4663 required First Amendment review, it would warrant only intermediate scrutiny. Section 4663 easily survives that review because it does not prevent Alibaba from speaking.

12

*Alibaba Group Holding Ltd., et al. v. U.S. Department of War, et al.*, 26-cv-6227-EKL – Opposition to Motion for Temporary Restraining Order and Preliminary Injunction

1. Not every law that touches on speech triggers strict scrutiny. *See Arcara*, 478 U.S. at 706 ("[W]e have not traditionally subjected every criminal and civil sanction imposed through legal process to 'least restrictive means' scrutiny simply because each particular remedy will have some effect on the First Amendment activities of those subject to sanction."). Strict scrutiny applies "only where it was conduct with a significant expressive element that drew the legal remedy in the first place . . . or where a statute based on a nonexpressive activity has the inevitable effect of singling out those engaged in expressive activity." *Id.* at 706-07. For example, in *Arcara*, the Court held that "the First Amendment [wa]s not implicated by the enforcement of a public health regulation of general application against the physical premises in which respondents happen to sell books," even though the store's owners would have to "move their bookselling business to another location." *Id.* at 706.

Furthermore, the government may validly make distinctions between speakers when the differential treatment is justified based on "some special characteristic of the particular speaker being regulated." *TikTok*, 604 U.S. at 72-73 (citation modified). In *TikTok*, the Supreme Court held that Congress could validly pass a law requiring divestiture of a large social media company "for the purpose of preventing a foreign adversary from accessing the sensitive data of 170 million U.S. TikTok users" because it was "not a subtle means of exercising a content preference." *Id.* at 73 (citation omitted). The Court held that the statute at issue "d[id] not trigger strict scrutiny" as "special characteristics," such as "a foreign adversary's ability to leverage its control over the platform to collect vast amounts of personal data[,] . . . justif[ied] this differential treatment." *Id.*

Here, Section 4663 does not target protected speech. Alibaba is free to petition the government, either directly or through an advocate, and it may hire more people to work in-house or contract with other firms to advocate on its behalf before Congress or any government agencies with whom it wishes to share its views. Section 4663 "neither limits what" Alibaba "may say nor requires [it] to say anything." *Rumsfeld*, 547 U.S. at 60.

Instead, Section 4663 prevents lobbyists who have unique and heightened access and influence within DoW from working for companies determined to be Chinese military companies.

13

*See* 10 U.S.C. § 4663(a), (d)(1). The reason for this prohibition is to mitigate the possibility that Chinese military companies, and by extension, the Chinese government, obtain sensitive information about the operations of the nation's military. 70 Cong. Rec. H6639 (daily ed. Dec. 10, 2024) ("Joint Explanatory Statement"), *available at* https://www.congress.gov/118/crec/2024/12/10/170/183/CREC-2024-12-10-pt1-PgH6596.pdf. Thus, the purpose of Section 4663 is to protect national security—just like the law that the Supreme Court upheld in *TikTok*, which involved the same foreign adversary as that targeted by Section 4663. Accordingly, Section 4663 does "not trigger strict scrutiny" as the statute relates to a foreign adversary's ability to harm the interests of the United States by placing sensitive military information at risk. 604 U.S. at 72.

2. At most, Section 4663 is subject to intermediate scrutiny rather than strict scrutiny because it does not impose a content-based restriction and is instead content neutral.

A content-based regulation is one that either "on its face . . . 'applies to particular speech because of the topic discussed or the idea or message expressed,'" *TikTok*, 604 U.S. at 70 (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2025)), or is "a facially content-neutral law" that "'cannot be justified without reference to the content of the regulated speech' or was 'adopted by the government because of disagreement with the message the speech conveys.'" *Id.* at 70-71 (quoting *Reed*, 576 U.S. at 164); *see also Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 642 (1994) (*Turner I*) ("Our precedents thus apply the most exacting scrutiny to regulations that suppress, disadvantage, or impose differential burdens upon speech because of its content."). Section 4663 does neither. Nothing in the text or operation of Section 4663 discriminates based on content. Nor are the national-security interests underlying Section 4663 "related to the content of expression." *TikTok*, 604 U.S. at 72. As such, Section 4663 is content-neutral because it does not "discriminate based on 'the topic discussed or the idea or message expressed.'" *City of Austin v. Reagan National Advertising of Austin, LLC*, 596 U.S. 61, 73-74 (2022) (quoting *Reed*, 576 U.S. at 171); *see also Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (a law is content-neutral where the "regulation of expressive activity . . . is justified without reference to the content of the

14

regulated speech" (citation and emphasis omitted)). When a provision is both facially content neutral and has a content-neutral justification, then "[n]o more than intermediate scrutiny is in order." *See TikTok*, 604 U.S. at 67, 69; *see also Turner I*, 512 U.S. at 642 ("[R]egulations that are unrelated to the content of speech are subject to an intermediate level of scrutiny because in most cases they pose a less substantial risk of excising certain ideas or viewpoints from the public dialogue." (citation omitted)).

Even if a content-neutral law imposes "incidental" burdens on protected expression, the Supreme Court has long recognized that such content-neutral restrictions are subject to intermediate scrutiny. *Rumsfeld*, 547 U.S. at 62. Under this standard, content-neutral laws are permissible if they "advance important governmental interests unrelated to the suppression of free speech and do[] not burden substantially more speech than necessary to further those interests." *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 189 (1997) (*Turner II*). Examples of statutes that have been upheld because they impose only incidental burdens on protected speech include a statute prohibiting the destruction of a military draft card because burning it was "not[] necessarily expressive," *United States v. O'Brien*, 391 U.S. 367, 375 (1968); a municipal guideline prohibiting the use of sound trucks because it was meant "to control noise levels," *Ward*, 491 U.S. at 792 ; a statute requiring cable television systems to carry certain local stations because it was meant to "protect broadcast television" from "unfair competition," *Turner I*, 512 U.S. at 652; and a statute requiring divestiture of a social media company to prevent a foreign adversary from accessing sensitive data of U.S. users. *TikTok*, 604 U.S. at 72-73.

To satisfy intermediate scrutiny, Section 4663 must "further an important Government interest unrelated to the suppression of free expression and . . . not burden substantially more speech than necessary to further that interest." *TikTok*, 604 U.S. at 73-74; *see also Turner II*, 520 U.S., at 189 (same). Section 4663 easily satisfies this standard. First, Section 4663's prohibition is designed to protect sensitive military-related information and insulate Department decision-makers from the potential influence of Chinese military companies, and by extension, the Chinese government. There is nothing necessarily expressive about preventing companies that have aligned

15

themselves with a foreign adversary from contracting with entities that have access to sensitive information related to national security. Section 4663's prohibition in no way regulates the content or viewpoints of Alibaba's speech but instead addresses only the national-security risks that flow from Alibaba's alignment with China's military goals. *Cf. TikTok*, 604 U.S. at 74 (noting that the statute at issue's "requirement [was] designed to prevent China—a designated foreign adversary—from leveraging its control over [a company] to capture the personal data of U. S. TikTok users"); *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011) (explaining that "the First Amendment does not prevent restrictions directed at commerce . . . from imposing incidental burdens on speech"). Section 4663 thus furthers an important government interest—national security.

Second, Section 4663 only incidentally affects Alibaba's speech and does not burden substantially more speech than necessary to further the government's national security interest. Section 4663 does not affect Alibaba's ability to speak. Alibaba is free to petition the government, either directly or through an advocate, and nothing in Section 4663 prevents the company from contracting with other lobbying firms or hiring its own in-house lobbyists to advocate on its behalf before the government. Further, Alibaba, as well as any DoW contractor that has a relationship with a covered lobbyist can request a waiver of Section 4663's requirements. 10 U.S.C. § 4663(c). At most, Section 4663's prohibitions are best analogized to a time, place, and manner regulation, which does not violate the First Amendment where "ample alternative modes of communication" are feasible. *Taxpayers for Vincent*, 466 U.S. at 812. Multiple alternative avenues exist for communication here, and Alibaba still is free to speak as it chooses.

3. Alibaba argues strict scrutiny applies because "[l]aws that burden political speech are subject to strict scrutiny." PI Motion at 15 (quoting *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010)). But *Citizens United* demonstrates that no political speech is burdened here. There, Congress passed a statute that banned a type of political speech in the lead-up to an election. *See Citizens United*, 558 U.S. at 337 ("The law before us is an outright ban, backed by criminal sanctions."). At issue was a "[s]peech restriction[]" that prohibited corporations, "including nonprofit advocacy corporations," from advocating for "the election or defeat of candidates" or to

16

broadcast political advertisements "within 30 days of a primary election and 60 days of a general election." *Id.* at 337, 340. There is no such restriction here: Alibaba may speak either directly or through an advocate about any topic it wishes at the time of its choosing.

Alibaba also argues that strict scrutiny applies because "Section 4663 . . . burdens Alibaba's expression by reason of who Alibaba is" as a Chinese military company. PI Motion at 15. In support, Alibaba cites *Citizen United*'s statement that "restrictions based on the identity of the speaker are all too often simply a means to control content." *Id.* (quoting *Citizens United*, 558 U.S. at 340). But *TikTok* belies Alibaba's argument, as the Court quoted the same language from *Citizens United* and held that "[n]o more than intermediate scrutiny [wa]s in order" because the regulations were based on content-neutral interests, because they were "not a subtle means of exercising content preference," and because the differential treatment was based on the company's special characteristics of "a foreign adversary's ability to leverage its control over the platform to collect vast amounts of personal data from 170 million U.S. users." *TikTok*, 604 U.S. at 73. Thus, "differential treatment to address the Government's national security concerns" was "justif[ied]." *Id.* As discussed above, Section 4663 is based on content-neutral national security interests; namely the government's interest in preventing China from gaining access to sensitive information about military operations and ensuring that the Department's decision-making on myriad issues is free from influence that could potentially give China a military advantage. Differential treatment, therefore, is appropriate.

### C.    Even if Strict Scrutiny Applies, Section 4663 Is Narrowly Tailored to Further Compelling National-Security Interests.

Strict scrutiny does not apply here. But even if it did, Section 4663 would satisfy strict scrutiny. Strict scrutiny requires a showing that the Act is "narrowly tailored to serve a compelling interest." *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 444 (2015). Narrow tailoring does not mean "[t]he impossibility of perfect tailoring." *Id.* at 454. And a less restrictive alternative can be considered only if it serves the government's "stated interests equally well." *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 731 (2014).

17

*Alibaba Group Holding Ltd., et al. v. U.S. Department of War, et al.*, 26-cv-6227-EKL – Opposition to Motion for Temporary Restraining Order and Preliminary Injunction

To start, it cannot be disputed that there is a compelling interest in preventing Chinese military companies from accessing sensitive military information through their relationships with lobbyists. Congress identified the need to mitigate "national security risks posed by consulting firms who simultaneously contract with the Department of [War] and the Chinese government or its proxies or affiliates" when it passed the bill enacting Section 4663. *See* Joint Explanatory Statement. And Congress determined that consulting firms who retained both American clients and Chinese government or Chinese-government affiliated clients posed risks that included "organizational conflicts of interest" and "deliberate or inadvertent sharing of confidential or proprietary information that may be used for Chinese economic or military advantage." *Id.*

As the government's compelling interest cannot be disputed, Alibaba mischaracterizes Section 4663 to say that its real interest is "the silencing of disfavored speakers." PI Motion at 15. But there is no support for that proposition: Congress did not include anything about speech in Section 4663, and the statute does not ban companies that have been designated as Chinese military companies under Section 1260H from lobbying. All Section 4663 does is prevent DoW from contracting with entities that have relationships with the same lobbyists that advocate on behalf of the designated Chinese military companies. *See* 10 U.S.C. § 4663(a), (d)(1). Nothing in the statute silences "disfavored speakers." PI Motion at 15.

Further, Section 4663 is narrowly tailored to address the government's compelling interest in protecting sensitive information by preventing lobbyists who have unique and heightened access and influence within DoW from contemporaneously working with companies designated as Chinese military companies. And no other alternative can accomplish that interest "equally well." *See Burwell*, 573 U.S. at 731. The approach enshrined by Congress ensures that a foreign adversary will not gain access or have influence, either directly or indirectly, to military information and that Chinese military companies cannot subtly influence any of DoW's decisions related to national security by influencing a lobbyist. Alibaba's proposed alternative of requiring disclosure when a lobbyist represents a Chinese military company, *see* PI Motion at 16-17, would not serve this interest equally well because there would still be access and the potential for influence.

18

Congress's considered judgment must be respected because Section 4663 relates to national security and foreign policy. Courts "respect [] the Government's conclusions" when "it comes to collecting evidence and drawing factual inferences in this area" because the Government—not the courts—has the responsibility "to confront evolving threats in an area where information can be difficult to obtain and the impact of certain conduct difficult to assess." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 34 (2010). That is true even when strict scrutiny applies, as the judgment of Congress and the Executive "is entitled to significant weight." *Id.* at 36. And "[t]he Government, when seeking to prevent imminent harms in the context of international affairs and national security, is not required to conclusively link all the pieces in the puzzle before we grant weight to its empirical conclusions." *Id.* at 35; *see also Zemel v. Rusk*, 381 U.S. 1, 17 (1965) ("[B]ecause of the changeable and explosive nature of contemporary international relations, . . . Congress . . . must of necessity paint with a brush broader than that it customarily wields in domestic areas").

### D.        Alibaba's Facial Challenge Is Even More Tenuous, and the Court Should Defer Ruling on It.

Alibaba also raises a facial challenge to Section 4663, arguing that it is unconstitutional by "chill[ing] protected rights to speech, petition, and association on a sweeping scale." PI Motion at 18. Alibaba argues that the statute burdens the free speech rights of Chinese military companies, the lobbying firms that would otherwise work with them, and defense contractors who would otherwise want to work with covered lobbyists. *Id.* at 18-20.

But this argument is premature, and the Court should not address this issue at the preliminary injunction stage because the Supreme Court has said that "[e]ven in the First Amendment context, facial challenges are disfavored, and neither parties nor courts can disregard the requisite inquiry into how a law works in all of its applications." *Moody v. NetChoice, LLC*, 603 U.S. 707, 743-44 (2024). The general rule prevents facial challenges because of "two 'cardinal principles' of our constitutional order: the personal nature of constitutional rights and the

*Alibaba Group Holding Ltd., et al. v. U.S. Department of War, et al.*, 26-cv-6227-EKL – Opposition to Motion for Temporary Restraining Order and Preliminary Injunction

prudential limitations on constitutional adjudication." *Los Angeles Police Dep't v. United Reporting Pub. Corp.*, 528 U.S. 32, 39 (1999) (citation omitted).

The Supreme Court recently reversed two circuit courts on this very basis and stated that "each court must evaluate the full scope of the law's coverage" and "must then decide which of the law's applications are constitutionally permissible and which are not, and finally weigh the one against the other." *Moody*, 603 U.S. at 744. Afterward, the Court must then decide whether "a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *See Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021) (citation omitted). That is a task that cannot be completed in this expedited posture and requires careful consideration of the parties beyond what Alibaba has provided. Nor is it necessary to grant Alibaba the relief it seeks: to be able to continue its relationships with its preferred lobbyists pending resolution of the merits. *See* PI Motion at 2 ("Alibaba asks only to be allowed to speak through its qualified, chosen representatives.").

Even if a facial challenge were not premature, Alibaba cannot meet that high bar. The Ninth Circuit has stated that "a facial challenge must fail unless, at a minimum, the challenged ordinance 'is directed narrowly and specifically at expression or conduct commonly associated with expression.'" *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 950 (9th Cir. 1997) (quoting *Roulette v. City of Seattle*, 97 F.3d 300, 305 (9th Cir. 1996)). In other words, facial challenges are permitted only against "against statutes that, 'by their terms,' sought to regulate 'spoken words,' or patently 'expressive or communicative conduct' such as picketing or handbilling." *Roulette*, 97 F.3d at 303-04 (citation omitted). As stated above, Section 4663 does neither. It does not prohibit any spoken words or any communicative conduct; instead, it merely prohibits the Government from contracting with an entity that uses a covered lobbyist. 10 U.S.C. § 4663(a), (d)(1).

## II.    Alibaba Fails to Demonstrate Irreparable Harm

Because Alibaba fails to establish a likelihood of success on the merits of its claims, the Court "need not consider the other [*Winter*] factors" and can deny Alibaba's motion on that basis alone. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (citation omitted). In any event, Alibaba

20

*Alibaba Group Holding Ltd., et al. v. U.S. Department of War, et al.*, 26-cv-6227-EKL – Opposition to Motion for Temporary Restraining Order and Preliminary Injunction

fails to meet the other factors as well. To obtain a preliminary injunction, Alibaba must also "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22. A "showing of a mere possibility of irreparable harm is not sufficient," *Earth Island Inst. v. Carlton*, 626 F.3d 462, 474 (9th Cir. 2010), nor is a "[s]peculative injury." *Federated Indians of Graton Rancheria v. Haaland,* 762 F. Supp. 3d 888, 897-98 (N.D. Cal. 2025); *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007). Rather, "a plaintiff must *demonstrate* immediate threatened injury." *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). Finally, "[w]hile a First Amendment claim 'certainly raises the specter' of irreparable harm and public interest considerations, proving the likelihood of [success on] such a claim is not enough to satisfy *Winter*." *DISH Network Corp. v. FCC*, 653 F.3d 771, 776 (9th Cir. 2011) (citation omitted). Alibaba must satisfy the remaining preliminary injunction factors, including irreparable harm. *See id.* Alibaba has not carried its burden.

The sole irreparable harm that Alibaba alleges is the *per se* First Amendment harm of being prevented from speaking, petitioning the government, and free association. PI Motion at 20. Plaintiffs claim that, because they have demonstrated a likelihood of success on its First Amendment claim, the irreparable harm factor naturally resolves in its favor. *Id*. As stated above, however, Alibaba must still establish a likelihood of irreparable harm stemming from its First Amendment claim. *See DISH Network*, 653 F.3d at 776.

First, Alibaba has not established irreparable harm because it has not demonstrated that it is likely to succeed on the merits of its First Amendment claim. The Section 4663 prohibition does not result in any "loss of First Amendment freedoms, for even minimal periods of time," *Elrod v. Burns*, 427 U.S. 347, 373 (1976), because the prohibition in no way hinders Alibaba's ability to espouse whatever views it wishes. Section 4663 prevents DoW from contracting with entities that themselves are party to a contract with a "covered lobbyist." *See* 10 U.S.C. § 4663(a). With Alibaba's designation as a Chinese military company under Section 1260H, this means, in effect, that any lobbying organization that also has clients that have contracts with DoW may choose to no longer provide lobbying services to Alibaba. Alibaba has not established that Section 4663

21

forecloses its ability to contract with *all* lobbyists. Alibaba also does not establish that it is wholly prevented from advocating on its own behalf and indeed can continue to speak. *See supra* Part I.

Second, Alibaba contends that it is irreparably injured by Section 4663 because its current lobbyists have "severed their representation" and that "no damages remedy could restore relationships built over more than a decade or undo the loss of Alibaba's voice before the government in the interim." PI Motion at 21, *see also* Declaration of Eric C. Pelletier ("Pelletier Decl.") ¶ 28-29, ECF No. 22. As a result, Alibaba claims it will not be able to effectively petition the government during ongoing proceedings in Congress and with the Executive Branch. *See* Pelletier Decl. ¶ 31-35. These claims too fail to establish irreparable harm. Alibaba has failed to establish that it would be completely foreclosed from petitioning the government, much less irreparably harmed by the outcome of any government proceeding which it might have otherwise influenced through lobbying activities. To the contrary, as discussed above, multiple alternative avenues exist for Alibaba to convey its views to Congress and the Executive Branch, including advocating on its own behalf and contracting with another lobbying firm. And, of course, Alibaba could also request the Secretary grant a waiver of the requirements of Section 4663. *See* 10 U.S.C. § 4663(c). Alibaba has thus failed to demonstrate that it is irreparably harmed by Section 4463.

### III.    The Balance of the Equities Favors Denying the Motion

Plaintiffs must also demonstrate that "the balance of equities tips in [its] favor" and "an injunction is in the public interest." *Winter*, 555 U.S. at 20. These "factors merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. To the extent the Court determines that Plaintiffs have raised "serious questions going to the merits" as opposed to demonstrating a likelihood of success, Alibaba must demonstrate that the "balance of hardships tips *sharply*" in its favor, in addition to demonstrating irreparable harm. *Immigrant Defs. L. Ctr.*, 145 F.4th at 986 (citation omitted). Alibaba has not met its burden with respect to either standard.

Here, too, Alibaba argues that its alleged First Amendment injury tips the remaining equitable factors in its favor. PI Motion at 21. Not so. First, contrary to Alibaba's assertion, it has not "raised serious First Amendment questions" let alone demonstrated a likelihood of success on

its First Amendment claim. *Id.* (citation omitted); *cf. Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (finding irreparable harm where plaintiff had demonstrated a likelihood of success on the merits of a First Amendment claim).

Second, even if Alibaba could show a likelihood of irreparable harm, "any such injury is outweighed by the public interest" and the Government's substantial "interest" in discouraging lobbying firms that retain a unique level of access and influence within DoW from simultaneously contracting with Chinese military company clients. Congress noted that there are "national security risks posed by consulting firms who simultaneously contract with the Department of [War] and the Chinese government or its proxies or affiliates" when it passed the bill enacting Section 4663. *See* Joint Explanatory Statement. Enforcement of Section 4663 thus serves an important national security interest by ensuring that lobbyists—who, by way of their work, have heightened ability to access and influence DoW officials—do not have conflicts of interest that could compromise national security. *See id.* It is important that these specialized lobbyists are not leveraging these heightened abilities in service of companies designated as Chinese military companies. At its broadest, Alibaba proposes a sweeping preliminary injunction that would overturn DoW's designation of Alibaba as a Chinese military company without having reviewed the factual basis for the Department's determination. *See* PI Motion at 22 (asking the Court to order Alibaba removed, temporarily, from the 1260H List). This proposal would have significant downstream consequences across multiple regulatory authorities that implicate Section 1260H listing such that the relief would be far broader than the alleged harm. *See, e.g.*, National Defense Authorization Act for Fiscal Year 2024, Pub. L. No. 118-31, § 805, 137 Stat. 136, 315 (codified at 10 U.S.C. note prec. § 4651) (prohibiting the Pentagon from "enter[ing] into, renew[ing], or extend[ing]" certain contracts involving entities identified on the 1260H List or entities "subject to [its] control."); Pub. L. No. 118-159, § 164, 138 Stat. at 1818 (codified at 10 U.S.C, note prec. § 4651) (prohibiting the Pentagon from procuring LiDAR systems from entities on the 1260H list). Further, Section 1260H was enacted in furtherance of the important government interest in protecting the U.S. military supply chain from potential foreign interference. Granting Plaintiffs' proposed relief

23

would intrude on "'complex, subtle, and professional decisions as to the . . . equipping, and control of a military force,' which are 'essentially professional military judgments.'" *Winter*, 555 U.S. at 24 (quoting *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973)). This Court must "give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest" in identifying and mitigating supply chain risks posed. *Id.* at 24 (quoting *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986)). Moreover, an order directing the Department to remove Alibaba from the 1260H List, even temporarily, would have broader consequences beyond the lobbying restriction in Section 4663 and countermand the Supreme Court's directive that the government's conclusions in the areas of national security and foreign policy—like inclusion on the 1260H List—are entitled to significant deference. *See Humanitarian L. Project*, 561 U.S. at 33-34.

At its narrowest, Alibaba proposes that the Court "enjoin Defendants from applying or enforcing Section 4663 to render any entity ineligible to contract with the Department by reason of that entity's—or its parent's or subsidiary's—contractual relationship with a firm that engages in lobbying activities for Alibaba, and from treating any such firm as a 'covered lobbyist' on account of its representation of Alibaba." PI Motion at 22. This proposed remedy fares no better in properly balancing the government's, and therefore the public's, national security interest in ensuring that military-industry lobbyists are not leveraging their access and influence on behalf of companies designated as Chinese military companies—designations that are being completed pursuant to specific statutory guidance set forth by Congress in Section 1260H.

Finally, the Government "suffers a form of irreparable injury" when it is prevented "from effectuating statutes enacted by representatives of its people." *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025). That harm is especially pronounced here because the interest in ensuring the nation's security "is an urgent objective of the highest order." *Humanitarian L. Project*, 561 U.S. at 28; *see Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 581-82 (2017) (recognizing the central importance of national security). Accordingly, "the balance of equities and consideration of the overall public interest . . . tip strongly" against granting Plaintiffs' motion. *Winter*, 555 U.S. at 26.

24

## IV.    Any Injunctive Relief Should Be Narrowly Tailored

If the Court were to provide preliminary relief (which it should not), the injunction should be narrowly tailored to provide only what "will offer complete relief to the plaintiffs before the court." *CASA*, 606 U.S. at 852. In line with this principle, to the extent the Court intends to grant Alibaba's request for a preliminary injunction, any such relief should be limited to an injunction enjoining Defendants from enforcing Section 4663 with respect to Alibaba, which would address the specific harm Alibaba alleges it has suffered in its motion. Such relief is consistent with the statute, which permits the Secretary of War to waive the requirements of Section 4663 while mitigating risk to the military's supply chain. *See* 10 U.S.C. § 4663(c).

## V.    Any Injunctive Relief Should Be Accompanied by a Bond.

Any preliminary injunction should also be accompanied by a bond under Fed. R. Civ. P. 65(c). As the D.C. Circuit recently clarified, "injunction bonds are generally required." *Nat'l Treasury Emps. Union v. Trump*, No. 25-5157, 2025 WL 1441563, at *3 n.4 (D.C. Cir. May 16, 2025) (per curiam). The Court has broad discretion to determine the amount of an appropriate bond. If the Court were to enter an injunction, Defendants ask that the bond amount reflect the cost and disruption to the Secretary's administration of the Section 1260H directive provided to him by Congress, resulting from Plaintiffs' requested relief.

### CONCLUSION

For the foregoing reasons, the Court should deny Alibaba's PI Motion.

DATED: July 21, 2026                                    Respectfully submitted,

                                                        /s/ J. Stephen Tagert

                                                        BRETT A. SHUMATE
                                                        Assistant Attorney General
                                                        Civil Division

                                                        KRISTINA WOLFE
                                                        Assistant Branch Director

25

*Alibaba Group Holding Ltd., et al. v. U.S. Department of War, et al.*, 26-cv-6227-EKL – Opposition to Motion for Temporary Restraining Order and Preliminary Injunction

J. STEPHEN TAGERT
Federal Programs Branch
Civil Division, Department of Justice
1100 L Street NW
Washington, DC 20005
Telephone: (202) 305-5486
stephen.tagert@usdoj.gov

*Counsel for Defendants*

26