Sheila A.G. Armbrust (CABN 265998)
sarmbrust@sidley.com
SIDLEY AUSTIN LLP
101 California Street, 35th Floor
San Francisco, CA 94111
Telephone: (415) 772-1200
Facsimile: (415) 772-7400

Carter G. Phillips (admitted *pro hac vice*)
cphillips@sidley.com
Jennifer J. Clark (admitted *pro hac vice*)
jennifer.clark@sidley.com
Christopher A. Eiswerth (admitted *pro hac vice*)
ceiswerth@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711

*Attorneys for Plaintiffs Alibaba Group Holding Limited
and Alibaba Group (U.S.) Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALIBABA GROUP HOLDING LIMITED; ALIBABA GROUP (U.S.) INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF DEFENSE a/k/a UNITED STATES DEPARTMENT OF WAR; PETE HEGSETH, *in his official capacity as Secretary of Defense*; STEPHEN FEINBERG, *in his official capacity as Deputy Secretary of Defense*; AND MICHAEL CADENAZZI, *in his official capacity as Assistant Secretary of Defense for Industrial Base Policy*, <br><br> Defendants. | Case No. 26-cv-6227-EKL <br><br> Hon. Eumi K. Lee <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** <br><br> DATE & TIME: August 27, 2026 at 1:30 pm <br> LOCATION: Courtroom 7, 4th Floor <br><br> **Complaint Filed on June 23, 2026** |

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

ARGUMENT ........................................................................................................................ 1

    I.     Alibaba Is Likely to Succeed on the Merits of Its First Amendment Claim.............. 1

          A.    Section 4663 triggers First Amendment scrutiny. ........................................ 2

          B.    Strict scrutiny applies................................................................................... 6

          C.    Section 4663 does not survive any form of heightened scrutiny. .................. 9

          D.    Section 4663 is facially overbroad............................................................... 12

    II.    The Equitable Factors Sharply Favor Injunctive Relief. ........................................ 13

    III.   The Court Should Grant Effective Relief. ............................................................... 14

CONCLUSION ..................................................................................................................... 15

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TRO/PRELIM. INJ.
CASE NO. 26-CV-6227

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Beverage Ass'n v. City & Cnty. of S.F.*,
  916 F.3d 749 (9th Cir. 2019) ...............................................................................................13

*Anthropic PBC v. U.S. Dep't of War*,
  825 F. Supp. 3d 1101 (N.D. Cal. 2026),
  *appeal docketed*, No. 26-2011 (9th Cir. Apr. 2, 2026) ...........................................................15

*Arcara v. Cloud Books, Inc.*,
  478 U.S. 697 (1986)................................................................................................................4

*Ashcroft v. ACLU*,
  542 U.S. 656 (2004)..............................................................................................................11

*Bantam Books, Inc. v. Sullivan*,
  372 U.S. 58 (1963)..............................................................................................................3, 4

*Boos v. Barry*,
  485 U.S. 312 (1988)................................................................................................................9

*Borough of Duryea v. Guarnieri*,
  564 U.S. 379 (2011)................................................................................................................2

*Brown v. Ent. Merchs. Ass'n*,
  564 U.S. 786 (2011)......................................................................................................9, 10, 12

*Burwell v. Hobby Lobby Stores, Inc.*,
  573 U.S. 682 (2014)..............................................................................................................11

*Citizens United v. FEC*,
  558 U.S. 310 (2010)......................................................................................................2, 3, 8, 9

*Doe v. Harris*,
  772 F.3d 563 (9th Cir. 2014) ...............................................................................................13

*E. R.R. Pres. Conf. v. Noerr Motor Freight, Inc.*,
  365 U.S. 127 (1961)................................................................................................................5

*Elrod v. Burns*,
  427 U.S. 347 (1976)..............................................................................................................13

*FCC v. League of Women Voters of Cal.*,
  468 U.S. 364 (1984)................................................................................................................7

*First Choice Women's Res. Ctrs., Inc. v. Davenport*,
    146 S.Ct. 1114 (2026) ............................................................................................................6

*Free Speech Coal., Inc. v. Paxton*,
    95 F.4th 263 (5th Cir. 2024), *aff'd*, 606 U.S. 461 (2025) ...........................................................3

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010) ................................................................................................................10

*Imperial Sovereign Ct. of Mont. v. Knudsen*,
    170 F.4th 820 (9th Cir. 2026) .............................................................................................11

*Jenner & Block LLP v. U.S. Dep't of Just.*,
    784 F. Supp. 3d 76 (D.D.C. 2025),
    *appeal docketed*, No. 25-5265 (D.C. Cir. July 22, 2025) ...........................................................4

*Johnson v. Couturier*,
    572 F.3d 1067 (9th Cir. 2009) .............................................................................................15

*Klein v. City of San Clemente*,
    584 F.3d 1196 (9th Cir. 2009) .............................................................................................13

*Members of City Council of L.A. v. Taxpayers for Vincent*,
    466 U.S. 789 (1984)..............................................................................................................6

*Meyer v. Grant*,
    486 U.S. 414 (1988)..............................................................................................................5

*Miller v. Ziegler*,
    109 F.4th 1045 (8th Cir. 2024) ................................................................................. *passim*

*Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*,
    460 U.S. 575 (1983)..............................................................................................................4

*Moody v. NetChoice, LLC*,
    603 U.S. 707 (2024)............................................................................................................12

*NAACP v. Button*,
    371 U.S. 415 (1963)..............................................................................................................6

*NetChoice, LLC v. Bonta*,
    113 F.4th 1101 (9th Cir. 2024) ...........................................................................................13

*Perry v. Sindermann*,
    408 U.S. 593 (1972)............................................................................................................12

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015)...............................................................................................7, 8, 9, 11

iii

*Roberts v. U.S. Jaycees*,
    468 U.S. 609 (1984)......................................................................................................6

*Roulette v. City of Seattle*,
    97 F.3d 300 (9th Cir. 1996) .......................................................................................13

*Rumsfeld v. FAIR, Inc.*,
    547 U.S. 47 (2006)......................................................................................................6

*Rutan v. Republican Party of Ill.*,
    497 U.S. 62 (1990)......................................................................................................4

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011)....................................................................................................9

*Thakur v. Trump*,
    176 F.4th 1187 (9th Cir. 2026) .............................................................................13, 14

*Thomas v. Collins*,
    323 U.S. 516 (1945)....................................................................................................3

*TikTok Inc. v. Garland*,
    604 U.S. 56 (2025).............................................................................................2, 3, 9

*Turner Broad. Sys., Inc. v. FCC*,
    512 U.S. 622 (1994)................................................................................................8, 12

*Underwager v. Channel 9 Austl.*,
    69 F.3d 361 (9th Cir. 1995) .........................................................................................3

*United States v. Hansen*,
    599 U.S. 762 (2023)...................................................................................................13

*United States v. Playboy Ent. Grp., Inc.*,
    529 U.S. 803 (2000)................................................................................................5, 11

*Young v. City of Simi Valley*,
    216 F.3d 807 (9th Cir. 2000) .......................................................................................4

**Statutes**

2 U.S.C. § 1602..............................................................................................................7

10 U.S.C. § 971..............................................................................................................7

10 U.S.C. § 4663 ..................................................................................................... *passim*

**Other Authorities**

170 Cong. Rec. H6639 (daily ed. Dec. 10, 2024) .......................................................10

**INTRODUCTION**

The government's opposition rests largely on the fiction that Section 4663 has nothing to do with the First Amendment because it regulates contracts, not speech. Its own brief gives the game away. It describes the statute as "designed to ... insulate Department decision-makers from the potential influence of Chinese military companies," Opp'n at 15, Dkt. 34—which is to say, the statute is aimed at stopping a disfavored class of speakers from trying to persuade the government. But influencing the government through persuasion is political speech and petitioning. It is at the core of what the First Amendment protects. A law built to prevent it must satisfy strict scrutiny.

This one cannot. The government's sole legislative support—the Joint Explanatory Statement—contains no "national security risk" findings at all. Rather, in that statement, Congress directed the Comptroller General to study *whether risks existed at all* concerning a *different situation*. And a statute is far from narrowly tailored when it silences a company's advocacy to the government on matters of public policy through every lobbying firm shared with a defense contractor, yet leaves the company free to deal directly with the very contractors the government fears will share sensitive information. Section 4663 is a muzzle—not a valid security measure.

The equities are not close. It is undisputed that every one of Alibaba's lobbying firms severed their relationships when Section 4663 took effect. And this case has already run the experiment on remedy. For the last month, the government has suspended Section 4663 by agreement as to Alibaba—suffering no identifiable harm. Yet no firm has re-registered to advocate on Alibaba's behalf because the statute's third-party deterrent remains. Alibaba respectfully asks the Court to grant relief durable enough to work: removal from the 1260H List pendente lite, or an injunction against Section 4663's enforcement.

**ARGUMENT**

**I.     Alibaba Is Likely to Succeed on the Merits of Its First Amendment Claim.**

The First Amendment protects the right to engage in political speech and to petition the government, including through lobbyists and other retained advocates. *See, e.g.*, Mot. at 9–11. By the government's own account, that is precisely what Section 4663 restricts: it "prevents lobbyists who have unique and heightened access and influence within [the Department] from working for

1

companies determined to be Chinese military companies." Opp'n at 13. And the government does not dispute that Alibaba's lobbying firms terminated their representation due to Section 4663. *See* Pelletier Decl. ¶¶ 28–29. A law that impairs a designated company's ability to be heard through its chosen advocates burdens protected expression, and it triggers First Amendment scrutiny—scrutiny that the government cannot satisfy at any level. Because the government has not carried its burden of justifying the lobbyist-contracting ban, Alibaba is likely to succeed on the merits or has at least raised serious questions going to the merits. *See* Opp'n at 5 (accepting sliding-scale standard).

### A.     Section 4663 triggers First Amendment scrutiny.

The government's main argument—that "Section 4663 does not cover any conduct protected by the First Amendment"—fails multiple times over. Opp'n at 5. Section 4663 burdens Alibaba's freedom of speech and right to petition the government. *See* Mot. at 11–14. The Supreme Court's decision in *TikTok Inc. v. Garland*, 604 U.S. 56 (2025), does not foreclose Alibaba's claim; Section 4663's indirect mechanism is no defense; and the Constitution precludes improper burdens on protected freedoms, not just outright bans.

***First***, the government's reliance on *TikTok* is misplaced. The law at issue there—which concerned a foreign entity's ownership and control of a communications platform—and Section 4663 are not remotely "similar." Opp'n at 7. The *TikTok* law required a specific company to divest ownership, and it incidentally burdened speech only because that company operated a social-media platform. 604 U.S. at 68. Section 4663, on the other hand, targets expression. *See* Mot. at 11–13. By the government's own account, the statute seeks to "insulate Department decision-makers from the potential influence of Chinese military companies." Opp'n at 15; *see id.* at 23. It thereby burdens Alibaba's right to speak on any matter of public policy and to petition the government through advocates of its choosing—rights that together "advance personal expression." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 388 (2011). Even under the government's own framework, such direct regulation of expression triggers First Amendment scrutiny. *See* Opp'n at 6 (citing *TikTok*, 604 U.S. at 67–68); *accord* Mot. at 9–14. Courts have applied that scrutiny to burdens on political speech and lobbying time and again. *See, e.g.*, *Citizens United v. FEC*, 558 U.S. 310, 340–41 (2010); *Miller v. Ziegler*, 109 F.4th 1045, 1049–50 (8th Cir. 2024); *see also* Mot. at 12–13. Nothing in *TikTok*

2

justifies the government's direct effort to restrict speech and petitioning.

Nor does *TikTok* suggest that First Amendment protections fall away because a statute is "'focus[ed] on a foreign government' that Congress has determined is in an 'adversary relationship with the United States.'" Opp'n at 7 (quoting *TikTok*, 604 U.S. at 69). The Supreme Court "assume[d] without deciding that the challenged provisions" in that case were "subject to First Amendment scrutiny," *TikTok*, 604 U.S. at 69, and applied it. A decision that expressly reserves a question does not resolve it. The government cites no authority adopting the sweeping carve-out its reading would require, and the governing law in this Circuit stands squarely against one. *See, e.g.*, *Underwager v. Channel 9 Austl.*, 69 F.3d 361, 365 (9th Cir. 1995) ("[T]he speech protections of the First Amendment at a minimum apply to all persons legally within our borders."); *accord Free Speech Coal., Inc. v. Paxton*, 95 F.4th 263, 287 (5th Cir. 2024), *aff'd*, 606 U.S. 461 (2025).

**Second**, that Section 4663 burdens core political speech and petitioning through an indirect mechanism involving several "causal steps" does not place the statute beyond the First Amendment's reach. Opp'n at 7. As the government acknowledges, "a government official cannot do indirectly what she is barred from doing directly." Opp'n at 11 (quoting *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 190 (2024)). To keep constitutional limits from being evaded through artful design, courts "look through forms to the substance" of regulations, *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963), and to "[t]he restriction's effect, as applied, in a very practical sense," *Thomas v. Collins*, 323 U.S. 516, 536 (1945). Congress could not directly forbid Alibaba from petitioning the Legislative or Executive Branches—including through its chosen advocates—without passing First Amendment scrutiny. *See Citizens United*, 558 U.S. at 369; *Miller*, 109 F.4th at 1049–50. So too here where Section 4663 forces Department contractors and lobbyists to sever ties with designated companies to accomplish the same end. *See* Mot. at 12–14 (collecting cases).

The government's suggestion (at 8, 11) that lobbying firms make "independent decisions" to drop their Chinese military company clients contradicts the statute and the undisputed record. Section 4663 presents every established firm representing a designated company with a false choice: keep one client or keep access to the entire universe of Department contractors. *See* Mot. at 12. No firm with a defense-contractor practice can rationally choose the former—as Congress well knew—

and as would be expected, Alibaba's lobbying firms terminated their relationships *because of* Section 4663's ban, Pelletier Decl. ¶¶ 28–29. A private "choice" that the government has engineered to come out one way is not an intervening cause; it is the mechanism through which the government accomplishes its end and triggers review. *See Bantam Books*, 372 U.S. at 68–69 (suppression carried out through the predictable reaction of a coerced private party is state action abridging speech).

*Arcara v. Cloud Books, Inc.*, 478 U.S. 697 (1986), does not help the government. There, a general health-and-safety law was "directed at unlawful conduct having nothing to do with … expressive activity," so its incidental effect on bookselling triggered no scrutiny. *Id.* at 707. Section 4663 is directed at the retention of advocates to petition the government, and its burden on that expression is the statute's design. *See* Opp'n at 13, 15, 23. This case instead resembles *Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue*, 460 U.S. 575, 581–83, 592–93 (1983), where a law imposing a special burden on a small, singled-out class triggered heightened scrutiny. Section 4663 singles out designated companies and effectively strips them alone of the advocates they need to petition. As in *Minneapolis Star*, such a statute must satisfy the First Amendment.

The government's efforts to distinguish *Vullo* fare no better. It suggests that *Vullo* is confined to a regulator's informal "threat[s]" of enforcement, unlike a duly enacted statute. Opp'n at 11–12. But enacting coercion into a statute does not cleanse it: If veiled threats that coerce third parties into abandoning a disfavored speaker offend the First Amendment, a statute commanding the same result offends it no less. *See, e.g.*, *Young v. City of Simi Valley*, 216 F.3d 807, 819 (9th Cir. 2000) (striking down ordinance because "a city cannot accomplish through private parties that which it is forbidden to do directly under the First Amendment"). The government also contends that *Vullo* requires "allegations that Defendants acted to try to punish Alibaba for its speech or to suppress [its] speech." Opp'n at 12. But *Vullo*'s controlling principle—that the government may not do indirectly what it is barred from doing directly—applies more broadly. *See, e.g.*, *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 77–78 (1990); *Jenner & Block LLP v. U.S. Dep't of Just.*, 784 F. Supp. 3d 76, 106–07 (D.D.C. 2025), *appeal docketed*, No. 25-5265 (D.C. Cir. July 22, 2025). In any event, the statute operates to suppress communication on public policy—classic suppression of speech.

**Third,** the government's contention that Section 4663 escapes review because it merely

4

burdens—rather than outright bans—Alibaba's speech and petitioning through advocates fails.

The First Amendment protects not only the right to speak and petition but the right "to select what [one] believe[s] to be the most effective means" of advocacy, *Meyer v. Grant*, 486 U.S. 414, 424 (1988), including joint efforts to influence legislation carried on through a paid campaign, *E. R.R. Pres. Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 137–38 (1961). The government ignores *Noerr* entirely, and it recasts *Meyer* as a case about "a statute's foreclosure of a means of communication altogether," Opp'n at 11. But as the government elsewhere recognizes, the law in *Meyer* merely "prevented paying petition circulators." *Id.* at 10. It left ballot-initiative proponents "other means to disseminate their ideas," including circulation by volunteers, and the State argued— just as the government does here—that even if the law limits speech, "the burden is permissible because other avenues of expression remain open." *Meyer*, 486 U.S. at 424. The Court was not persuaded: it held that a law "does not relieve its burden on First Amendment expression" just because it "leaves open 'more burdensome' avenues of communication," *id*, and the restriction fell because it "limit[ed] the number of voices who [would] convey [the] message" and curtailed access to the most effective means of conveying it, *id.* at 422–23; *accord United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 812 (2000) ("The distinction between laws burdening and laws banning speech is but a matter of degree."). *Meyer* thus forecloses any argument that Section 4663 avoids scrutiny simply because Alibaba could petition the government itself or hire other lobbyists.

The government similarly misreads *Miller*. It acknowledges that the Eighth Circuit held that Missouri's two-year bar on former legislators lobbying burdened a *company*'s First Amendment rights by preventing it from retaining its chosen advocate. Opp'n at 11 (citing *Miller*, 109 F.4th at 1049–50). It seeks to distinguish the case on the grounds that Missouri barred former legislators from all lobbying, whereas Section 4663 merely forces firms to choose between Department contractors and designated companies. *Id.* But that distinction addresses the wrong party's rights. Whether the restriction was "outright" or partial measures how completely it shut the *lobbyist* out of the profession. *See* Mot. at 18–20; pp. 12–13, *infra*. To the company seeking to be heard, what matters is whether it can retain the advocate it wants to carry its message. That is what *Miller* found a burden: the law "limited the company's options and kept it from 'advocating its cause' in the way

5

'it believed to be the most effective.'" 109 F.4th at 1050 (cleaned up) (quoting *Meyer*, 486 U.S. at 424). If anything, Section 4663 impairs Alibaba's rights more severely, reaching far beyond former legislators to every firm with a defense-contractor practice. The government offers no answer.

Finally, the government's suggestion that Section 4663 burdens only Alibaba's ability to retain advocates, not its right to speak itself, Opp'n at 9–10, fails for the same reason. The rights to political speech and to petition have always embraced the right to act through legitimate advocates. *See, e.g.*, *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984) ("An individual's freedom to speak, to worship, and to petition the government for the redress of grievances could not be vigorously protected from interference by the State unless a correlative freedom to engage in group effort toward those ends were not also guaranteed."); Mot. at 10–11 (collecting other cases). That expressive association may provide an independent basis to preclude compelled disclosure of affiliation, *see First Choice Women's Res. Ctrs., Inc. v. Davenport*, 146 S. Ct. 1114, 1122–23 (2026), does not diminish the constitutional protection for speaking or petitioning through "orderly group activity," *NAACP v. Button*, 371 U.S. 415, 430 (1963). And the government's own cases confirm the point rather than refute it: *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 803, 808–17 (1984), applied First Amendment scrutiny to a sign ordinance, and *Rumsfeld v. FAIR, Inc.*, 547 U.S. 47, 70 (2006)—while finding no infringement on the facts— recognized that "[i]f the government were free to restrict individuals' ability to join together and speak, it could essentially silence views that the First Amendment is intended to protect," *id.* at 68. Severing a company from the advocates it needs to reach the government burdens the right to speak and petition itself, not some lesser interest in a preferred consultant, and is subject to scrutiny.

**B.      Strict scrutiny applies.**

Section 4663 triggers strict scrutiny for three independent reasons: (1) it restricts core political speech and petitioning; (2) it facially discriminates based on the content of communications; and (3) it discriminates based on the identity of the speaker. *See* Mot. at 15. Any one would suffice; together, they foreclose the contention that intermediate scrutiny is appropriate.

**Core Political Speech and Petitioning.** Section 4663 restricts core political speech and petitioning and thus requires strict scrutiny. Lobbying "to influence government policy through

6

information and persuasion … qualifies as 'core political speech,'" as does "petitioning the Government for a redress of grievances." *Miller*, 109 F.4th at 1049 (cleaned up). And "[n]eutral or not, 'laws that burden political speech are subject to strict scrutiny.'" *Id.* at 1050 n.1 (cleaned up) (quoting *Citizens United*, 558 U.S. at 340). Because Section 4663 impairs Alibaba's ability to engage on public policy and to petition the government, that demanding standard governs here.

The government's contrary arguments miss the mark. Section 4663 burdens expressive activity, so *Arcara* has no application. Opp'n at 13; *see* p. 4, *supra*. And the government's attempt to distinguish *Citizens United*—on the ground that the restriction there was an "outright ban," Opp'n at 16–17—fares no better. Strict scrutiny attaches because a statute *burdens* political speech. *Citizens United* does not hold that only total bans qualify, and the government identifies no authority imposing such a limit. In any event, the premise is mistaken: the undisputed record shows that Section 4663 operates as an effective ban on Alibaba's ability to petition through retained advocates. *See* Pelletier Decl. ¶¶ 28–29.

**Content-Based Discrimination.** Despite the government's assertions to the contrary (at 14), Section 4663 also warrants strict scrutiny as a content-based speech restriction.

"Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). "A regulation that denies one group of persons the right to address a selected audience on 'controversial issues of public policy' is plainly such a regulation." *FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 384 (1984).

Section 4663 is facially content-based. The ban does not trigger when Department contractors share attorneys, consultants, or advisors generally with designated entities. It applies only when they share "covered lobbyists"—entities that Section 4663 defines as those who perform "lobbying activities," 10 U.S.C. § 4663(d)(2), that is, those who communicate with certain government officials on a designated entity's behalf regarding particular subjects, including "Federal legislation (including legislative proposals)" and any "Federal rule, regulation, Executive order, or any other program, policy, or position of the United States government," 2 U.S.C. § 1602(7)–(8); *see* 10 U.S.C. § 971 note prec. Whether the statute applies therefore depends on the

subject matter of the firm's communications with the government: a firm that advises a designated company on matters unrelated to government policy is untouched, while one that speaks to the government about legislation on the company's behalf is covered. A law that "draws distinctions based on the message a speaker conveys" is facially content-based. *Reed*, 576 U.S. at 163.

The government's assertions—that "[n]othing in the text or operation of Section 4663 discriminates based on content" and that it is "content neutral," Opp'n at 14—cannot be reconciled with the statute. A law that defines its scope by reference to a specific category of speech does not become content-neutral because the government would prefer to describe it as such. Nor does the government's invocation of national security change the analysis: a law that is content-based on its face is subject to strict scrutiny "regardless of the government's benign motive [or] content-neutral justification." *Reed*, 576 U.S. at 165.

**Speaker-Based Discrimination.** Strict scrutiny is further warranted by Section 4663's targeting of Alibaba and other designated entities for disparate treatment.

Speaker-based laws are suspect because they are too often a "means to control content." *Citizens United*, 558 U.S. at 340. Such "laws demand strict scrutiny when they reflect the Government's preference for the substance of what the favored speakers have to say (or aversion to what the disfavored speakers have to say)." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 658 (1994). Section 4663 draws precisely such a line: a lobbying firm may represent any client it chooses—except an entity the Department has designated a Chinese military company. 10 U.S.C. § 4663(a), (d)(1). The government does not dispute that the statute turns on speaker identity; it argues only that (1) "Section 4663 is based on content-neutral national security interests" and (2) the resulting differential treatment is justified under *TikTok*. Opp'n at 13, 17. Neither has merit.

The government concedes that Section 4663 is "designed to ... insulate Department decision-makers from the potential influence of Chinese military companies," *id.* at 15, and to "ensur[e] that the Department's decision-making on myriad issues is free from influence that could potentially give China a military advantage," *id.* at 17. But an interest in preventing a speaker from "influenc[ing]" the government is an interest in the direct communicative impact of the speech itself—the persuasion that is the very object of lobbying. *Miller*, 109 F.4th at 1049 (cleaned up). A

8

justification that rests on "the direct impact of speech on its audience" is by definition content-based. *Boos v. Barry*, 485 U.S. 312, 321 (1988). Far from demonstrating content-neutrality, the government's justification merely confirms that the speaker distinction is precisely what *Citizens United* warned against—a proxy for content control. *See* 558 U.S. at 340.

The government's overreading of *TikTok* does not suggest otherwise. The company-specific treatment in that case rested on a characteristic wholly unrelated to expression—"a foreign adversary's ability to leverage its control over the platform to collect vast amounts of personal data from 170 million U.S. users." 604 U.S. at 73. And the Court went out of its way to confine that decision to those facts, "emphasiz[ing] the inherent narrowness of [its] holding" and cautioning that "[a] law targeting any other speaker would by necessity entail a distinct inquiry." *Id*. Nothing in *TikTok* suggests that the government may burden particularly disfavored speakers based on the anticipated persuasive force of their advocacy. *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 580 (2011) (government "cannot" "burden[] a form of protected expression that it f[inds] too persuasive"). Yet the government asks this Court to extend *TikTok* far past the boundaries the Supreme Court drew around it—without confronting those limits, and without a single other authority in support. That is no basis for subjecting Section 4663 to anything less than strict scrutiny.

## C. Section 4663 does not survive any form of heightened scrutiny.

Statutes that restrict political speech or draw content-based lines are presumptively unconstitutional, and the burden falls on the government to prove them "narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163. That means the government "must specifically identify an 'actual problem' in need of solving, and the curtailment of free speech must be actually necessary to the solution." *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 799 (2011). The government has not come close to carrying that burden. And Section 4663 would even fail under intermediate scrutiny because it burdens far more speech than any legitimate interest requires.

1. The government has not identified an actual problem that Section 4663 purports to solve. It claims that Congress determined the lobbyist-contracting ban was needed "to mitigate the possibility that Chinese military companies, and by extension, the Chinese government, obtain sensitive information about the operations of the nation's military." Opp'n at 14 (citing 170 Cong.

9

Rec. H6639 (daily ed. Dec. 10, 2024)). But the Joint Explanatory Statement on which the government relies contains no such finding. It recounts the provision's procedural history and calls for a study; it identifies no incident, no example, and no data suggesting that a shared lobbyist has ever compromised military information. The passages that the government quotes for what Congress "noted," *id.* at 23, and "identified," *id.* at 18, are in fact part of Congress instructing the Comptroller General to "submit a report … on the national security risks posed by consulting firms who simultaneously contract with the Department of Defense and the Chinese government or its proxies or affiliates." 170 Cong. Rec. at H6639. That directive concerns a different problem—consulting firms themselves working for both the Department and the Chinese government—not lobbying firms that represent designated companies. And Congress directed that study in the very statement announcing the ban, with the results due a year after enactment—asking the Comptroller General to "[e]valuate the extent to which the Department ... has assessed the risks" at all. *Id.* A legislature that must ask whether the risk has ever been assessed has not "specifically identif[ied] an 'actual problem' in need of solving," *Brown*, 564 U.S. at 799—it has instead restricted speech first and gone looking for the justification afterward.

Deference cannot fill that gap. The government invokes the judiciary's respect for the political branches' national-security judgments, Opp'n at 19, but *Holder v. Humanitarian Law Project* deferred to a record: specific congressional findings and an Executive Branch evaluation linking the regulated conduct to the asserted harm. 561 U.S. 1, 29–31, 33–34 (2010). Even then, the Court cautioned that "concerns of national security and foreign relations do not warrant abdication of the judicial role." *Id.* at 34. Here there are no findings, no evaluation, and no evidence—only a commissioned study of a different problem, from which the government identifies no results. Under strict scrutiny, the government's failure of proof is dispositive.

**2.** In any event, Section 4663 is not narrowly tailored. The government starts by diluting the standard, asserting that "a less restrictive alternative can be considered only if it serves the government's 'stated interests equally well.'" Opp'n at 17 (citing *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 731 (2014)). *Hobby Lobby* imposed no such threshold on challengers—it described the least-restrictive-means test as "exceptionally demanding" and faulted the government

for failing to show that it "lack[ed] other means of achieving its desired goal." 573 U.S. at 728. "When plaintiffs challenge a content-based speech restriction, the burden is on the Government to prove that the proposed alternatives will not be as effective as the challenged statute." *Ashcroft v. ACLU*, 542 U.S. 656, 665 (2004); *accord Playboy*, 529 U.S. at 816.

The government cannot carry that burden because Section 4663 is wildly overinclusive. Its ban is indifferent to everything the asserted interest turns on: the lobbyist-contracting bar applies whether or not the firm lobbies the Department or has access to any sensitive information. A firm that petitions Congress about tax or trade policy is swept in alongside one embedded in weapons procurement. This is not the "impossibility of perfect tailoring" at the margins, Opp'n at 17 (citing *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 454 (2015)); it is a categorical prohibition untethered from the harm the government describes, *see Imperial Sovereign Ct. of Mont. v. Knudsen*, 170 F.4th 820, 864 (9th Cir. 2026) (A "blunt and draconian instrument" is "not narrowly tailored.").

The statute is equally underinclusive. If the government were truly concerned with designated companies obtaining sensitive information through defense contractors, the statute's gaps would be inexplicable: it leaves designated companies free to deal directly with any contractor; and it ignores the attorneys, public-relations firms, and other consultants who count both Department contractors and designated entities as clients. "[A] law cannot be regarded as protecting an interest of the highest order ... when it leaves appreciable damage to that supposedly vital interest unprohibited." *Reed*, 576 U.S. at 172 (quoting *Republican Party of Minn. v. White*, 536 U.S. 765, 780 (2002)). The statute's gaps track no security logic; they track the suppression of paid advocacy.

Less restrictive means are available. The Department controls access to its sensitive information through classification rules, security clearances, nondisclosure agreements, cybersecurity certifications, and other regulations, and numerous criminal and civil penalties deter noncompliance. The government has not shown that these tools are insufficient or could not be adapted to address its purported concerns with "covered lobbyists." Likewise, Section 4663(c) allows the Secretary to waive the lobbyist-contracting bar, showing that case-by-case assessments are possible, and the government has not demonstrated that such targeted assessments, when paired with disclosure requirements, would not protect the government's interest. *See* Mot. at 16–17. The

11

government's sole response—that "there would still be access and the potential for influence" with disclosure, Opp'n at 18—gives the game away twice over: "potential" is the language of conjecture, not an actual problem, *Brown*, 564 U.S. at 799, and an objection that the speaker would retain "influence" is just an objection to persuasive speech itself.

**3.** Even if intermediate scrutiny governed, Section 4663 would still fail. A content-neutral regulation may not "burden substantially more speech than is necessary to further the government's legitimate interests," *Turner*, 512 U.S. at 662, and for the reasons just given, Section 4663 does exactly that: it silences petitioning on matters of public policy through any shared firm, without regard to whether that firm lobbies the Department or has access to sensitive information, while leaving the asserted risks untouched through every other channel. Nor do the government's "alternative avenues," Opp'n at 16, save it. On this record, the alternatives are illusory—every firm representing Alibaba severed its relationship when the statute took effect, Pelletier Decl. ¶¶ 28–29, and Alibaba has not secured a comparable replacement, Pelletier Supp. Decl. ¶ 7. That it may be possible to obtain a waiver is insufficient because the Department has discretion whether to grant one. Thus, while Section 4663 is no mere time, place, and manner restriction, it fails even if it were.

**D.    Section 4663 is facially overbroad.**

The government asks the Court to "defer" ruling on Alibaba's facial challenge, Opp'n at 19–20, but it cannot avoid the claim by sitting out the argument. Alibaba showed that Section 4663 burdens the rights of every designated company, the speech and petition rights of the lobbying firms themselves, *see Miller*, 109 F.4th at 1049–50, and the rights of Department contractors—who are denied a government benefit because of their protected associations and petitioning activities, a paradigmatic unconstitutional condition, *see Perry v. Sindermann*, 408 U.S. 593, 597 (1972); Mot. at 18–20. The government disputes none of these points. Nor does it identify a single constitutional application of the statute. That silence is dispositive under the government's own authority: *Moody v. NetChoice, LLC*, 603 U.S. 707, 723–25, 744 (2024), directs courts to assess a law's applications and measure the unconstitutional ones against the statute's "plainly legitimate sweep." And the government has identified no legitimate sweep to measure. Nor is there any reason to "defer." *Moody* involved a statute spanning heterogeneous applications the record did not address; Section

4663 has one mechanism, and every application does the same thing—sever the connection between a designated company and its advocates through pressure on Department contractors. In that situation, where "every application … raises the same First Amendment issues," *Moody* is no barrier to addressing a facial challenge. *NetChoice, LLC v. Bonta*, 113 F.4th 1101, 1116 (9th Cir. 2024).

The government's sole merits response defeats itself. It invokes the Ninth Circuit's statement that a facial challenge should lie only against a law "directed narrowly and specifically at expression or conduct commonly associated with expression." Opp'n at 20 (quoting *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 950 (9th Cir. 1997)). But that describes Section 4663 exactly. Unlike the sidewalk-sitting ordinance in *Roulette v. City of Seattle*, 97 F.3d 300 (9th Cir. 1996), or the curfew in *Nunez*, Section 4663 is triggered by "lobbying activities"—core political speech.

Finally, deferral would reward the very chill the overbreadth doctrine exists to prevent. Overbroad laws suppress the speech of parties who never sue—they simply comply. *United States v. Hansen*, 599 U.S. 762, 770 (2023). That is this record: neither the lobbying firms nor the contractors have litigated; the firms simply severed their relationships. Pelletier Decl. ¶¶ 28–29. Alibaba's facial challenge is ripe for adjudication—and as explained below, it bears directly on the scope of effective relief. *See* Part III, *infra*.

## II.    The Equitable Factors Sharply Favor Injunctive Relief.

Binding precedent "clearly favors granting preliminary injunctions to a plaintiff … who is likely to succeed on the merits of his First Amendment claim." *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009); *see* Mot. at 20–21. The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). "A 'colorable First Amendment claim'" alone is enough. *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014). And a likelihood of success "compels a finding that the balance of hardships tips sharply in Plaintiff's favor" because "it is always in the public interest to prevent the violation of a party's constitutional rights." *Am. Beverage Ass'n v. City & Cnty. of S.F.*, 916 F.3d 749, 758 (9th Cir. 2019) (en banc) (cleaned up); *accord Thakur v. Trump*, 176 F.4th 1187, 1205 (9th Cir. 2026). The government cites nothing to the contrary. Its sole theory is that Alibaba loses on the merits, so the other factors follow. Opp'n at 21–23. But Alibaba's First Amendment claim is not

only colorable, it is meritorious. *See* Part I, *supra*.

The record removes any doubt. It is undisputed—no declaration or evidence says otherwise—that Alibaba's lobbying firms severed their relationships when Section 4663 took effect and, as a result, that Alibaba cannot effectively petition the government. Pelletier Decl. ¶¶ 28–35. Lost hearings and mark-ups cannot be re-run, and laws and regulations enacted while Alibaba is voiceless cannot easily be unwound. *See* Pelletier Supp. Decl. ¶¶ 8–11. The government's answer— Alibaba could represent itself, or find some other firm, or hope for a standardless waiver—is the same burden-versus-ban mistake that runs through its merits arguments. *See* Part I.A, *supra*.

The government's harm arguments fail as to both forms of relief Alibaba has requested. Against temporarily removing Alibaba from the 1260H List, the government invokes military deference and "significant downstream consequences"—that Alibaba would not be barred from contracting with the Department. Opp'n at 23–24. But those consequences are imaginary: the government does not explain why it would ever purchase from Alibaba, identify any contract between Alibaba and the Department, or dispute that "Alibaba's standard contracts forbid military use of its products and services." Pelletier Decl. ¶ 17. Nor would interim removal countermand any military judgment—it would leave the designation's basis unadjudicated and simply preserve, while the Court decides Section 4663's constitutionality, the status quo that existed before June 10, 2026. And against Alibaba's narrower request—an order confined to Section 4663, which leaves the List and every downstream authority untouched—the government identifies no harm whatsoever in Alibaba (or any company) retaining lobbyists. That silence is fitting, because the government "cannot suffer harm from an injunction that merely ends an unlawful practice." *Thakur*, 176 F.4th at 1205 (quoting *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)).

## III.    The Court Should Grant Effective Relief.

The parties agree that an injunction should provide "complete relief to the plaintiffs before the court." Opp'n at 25 (quoting *Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025)). This case has already tested what completeness requires. Since July 5, the government has been operating under precisely the remedy its opposition proposes: by stipulated order, Alibaba is "not … treated as a Chinese military company for purposes of 10 U.S.C. § 4663 only." Dkt. 29 ¶ 1. Yet no firm has

resumed representing Alibaba because of the limited nature of the stipulated order. Pelletier Supp. Decl. ¶¶ 2–6. In other words, interim forbearance has not restored Alibaba's rights.

What is needed is an order that removes Section 4663's unconstitutional third-party deterrent. The most direct form is temporary removal of the lobbyist-contracting ban's trigger while the case proceeds—the Department's designation of Alibaba as a "Chinese military company" on the Section 1260H List. 10 U.S.C. § 4663(d)(1). Unlike the stipulation's Section 4663-specific carve-out, removal from the List changes the one signal that firms' compliance functions actually consult. Removal pendente lite would restore the status quo that existed a few weeks ago, adjudicate nothing about the designation's merits, and—on this record—cost the government nothing, as the Department does not contract with Alibaba. Alternatively, the Court may enjoin enforcement of Section 4663 in full pending final judgment—relief independently supported by Alibaba's unrebutted facial challenge, *see* Part I.D, *supra*, and one that leaves the designation and every downstream authority in place. At a bare minimum, the Court should continue the stipulation's terms through the life of this case—untethered from any hearing date or motion ruling—so that firms need not price in the risk that their client's protection expires in sixty days.

As for security, "Rule 65(c) invests the district court 'with discretion as to the amount of security required, *if any*.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009). The government proposes no figure and offers no evidence—unsurprising, since it has borne the stipulation's terms for a month without identifiable cost. No requested injunction would mandate spending, and there is no "showing of the costs or damages" to secure. *Anthropic PBC v. U.S. Dep't of War*, 825 F. Supp. 3d 1101, 1136 (N.D. Cal. 2026), *appeal docketed*, No. 26-2011 (9th Cir. Apr. 2, 2026). The Court should deny the government's request or, at most, should set a nominal bond of $100—as it recently did when faced with the same request from the same Department with the same evidentiary void. *Id.*

## CONCLUSION

For these reasons and those in the motion, the Court should grant Alibaba's motion for a preliminary injunction.

//

Date: August 4, 2026                      SIDLEY AUSTIN LLP


                                          */s/ Christopher A. Eiswerth*
                                          Sheila A.G. Armbrust (CABN 265998)
                                          Carter G. Phillips (admitted *pro hac vice*)
                                          Jennifer J. Clark (admitted *pro hac vice*)
                                          Christopher A. Eiswerth (admitted *pro hac vice*)

                                          *Attorneys for Plaintiffs Alibaba Group Holding Limited and Alibaba Group (U.S.) Inc.*

16

## **GENERATIVE AI CERTIFICATION**

I certify that any content generated by artificial intelligence in the foregoing motion and accompanying papers has been personally verified for accuracy and any prompts have been retained.

> */s/ Christopher A. Eiswerth*
> Christopher A. Eiswerth
>
> *Attorney for Plaintiffs Alibaba Group Holding Limited and Alibaba Group (U.S.) Inc.*

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TRO/PRELIM. INJ.
CASE NO. 26-CV-6227-EKL