UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALIBABA GROUP HOLDING LIMITED, et al.,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF DEFENSE, et al.,

Defendants.

Case No. 5:26-cv-06227-EKL

**ORDER GRANTING PRELIMINARY INJUNCTION**

Re: Dkt. No. 20

On February 13, 2026, the United States Department of Defense ("Department") publicly designated Alibaba Group Holding Limited as a "Chinese military company" ("CMC").[1] On June 30, 2026, 10 U.S.C. § 4663 went into effect, barring the Department from contracting with any company who retained the same lobbyist as a CMC. Alibaba asserts that Section 4663 has caused lobbyists to withdraw from representing Alibaba for fear of losing other clients.[2] Alibaba brings this action, alleging violations of the First Amendment, the Due Process Clause, and the Administrative Procedure Act.

[1] The Department of Defense was named the Department of War as a secondary title. Exec. Order No. 14347, 90 Fed. Reg. 43,893 (Sep. 5, 2025). Because the statute at issue, 10 U.S.C. § 4663, refers to the Secretary of Defense, this Order refers to the agency and the individual defendants as the Department of Defense, Secretary of Defense Pete Hegseth, Deputy Secretary of Defense Stephen Feinberg, and Assistant Secretary of Defense Michael Cadenazzi (collectively, "Defendants").

[2] The Court refers to Plaintiffs Alibaba Group Holding Limited and Alibaba Group (U.S.) Inc. in the singular as "Alibaba." Alibaba Group Holding Limited is "a publicly traded Cayman Island holding company[,]" "with its principal executive offices" in Hangzhou, China. Compl. ¶ 10. "Alibaba Group (U.S.) Inc. is a Delaware corporation with its principal place of business in Sunnyvale, California." *Id.* ¶ 11. Alibaba Group (U.S.) Inc. is the U.S. subsidiary of Alibaba Group Holding Limited. Mot. at 1.

United States District Court
Northern District of California

Alibaba now moves for a preliminary injunction, arguing that Section 4663 violates its First Amendment right to speak to and petition the government. Defendants oppose the motion. The Court reviewed the entire record and relevant authorities and heard argument on August 27, 2026. For the reasons discussed below, the Court GRANTS Plaintiff's motion for a preliminary injunction.

## I. BACKGROUND

### A. Alibaba

Alibaba is an e-commerce and cloud-computing company that provides products, technology, infrastructure, and services to consumers and businesses for civilian and commercial use. Pelletier Decl. ¶ 4, ECF No. 22. Alibaba provides U.S. companies and businesses with a platform to sell their products to consumers in China. Pelletier Decl. Ex. A, ECF No. 22-1. Additionally, it provides commercial cloud services to companies, including U.S. companies, operating in China and other countries. Pelletier Decl. ¶ 7. Alibaba has developed open-source AI models, including Qwen, with a focus on "commercial applications that make it more efficient and secure for businesses to sell goods to consumers in China." *Id.* ¶ 8. Alibaba is publicly listed on both the New York Stock Exchange and Hong Kong Stock Exchange. *Id.* ¶¶ 4, 9.

"Prior to being designated [a CMC], Alibaba had retained over two dozen lobbyists and multiple lobbying firms to represent its interests before Congress and the Executive Branch." *Id.* ¶ 26. These lobbyists assisted Alibaba by conducting research in preparation for lobbying activities. *Id.* ¶ 27. These lobbyists also engaged with "Congress, the Executive Office of the President, the Federal Communication Commission [("FCC")], the Federal Trade Commission, the Consumer Products Safety Commission, the Department of the Treasury, and others" on behalf of Alibaba. *Id.* ¶ 26. "They presented Alibaba's views on legislation, rules, regulations, executive orders, and other government policies of commercial interest to the company. Specifically, they advocated regarding export expansion, small business export promotion, technology policy, access to U.S. capital markets, e-commerce-related issues, consumer-protection laws, and intellectual property." *Id.*

United States District Court
Northern District of California

### B. Statutory Framework

#### 1. Section 1260H

On January 1, 2021, Congress enacted the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021 ("Thornberry Act"). Pub. L. No. 116-283, § 1260H, 134 Stat. 3388, 3965 (Jan. 1, 2021) (codified as amended at 10 U.S.C. § 113 note). Section 1260H of the Thornberry Act ("Section 1260H") requires that the Secretary of Defense identify CMCs that are "operating directly or indirectly in the United States[.]" § 1260H(a). Section 1260H was subsequently amended in 2024 and 2025. *See* Pub. L. No. 118-159, § 1346, 138 Stat. 1773, 2123 (Dec. 23, 2024); Pub. L. No. 119-60 §§ 1262(a), 1263, 139 Stat. 718, 1118, 1119 (Dec. 18, 2025).

To qualify as a CMC under Section 1260H, an entity must "engag[e] in providing commercial services, manufacturing, producing, or exporting." § 1260H(g)(2)(B)(ii). In order to be deemed a CMC, the entity then must meet one of two criteria: (1) it is "directly or indirectly owned by, controlled by, or beneficially owned by, affiliated with, or in an official or unofficial capacity acting as an agent of or on behalf of" certain governmental agencies of the People's Republic of China ("PRC"),[3] § 1250(g)(2)(B)(i)(I); or (2) it is a "military-civil fusion contributor[] to the Chinese industrial base,"[4] § 1250H(g)(2)(B)(i)(II).

Pursuant to Section 1260H, the Secretary submits a list of CMCs to Congress every year that includes "a justification for adding any entities to the list and for deleting any entities from a prior list." § 1260H(b)(1). The Secretary is also required to publish a public version of the entity list to the Federal Register ("1260H List"). § 1260H(b)(2). The 1260H List serves as a trigger for other federal and state restrictions. For instance, the Department of Defense and the Department

---

[3] The statute names several PRC governmental entities. The entities relevant to this Order are: (1) the Chinese Ministry of Industry and Information Technology ("MIIT"); and (2) the State-Owned Assets Supervision and Administration Commission of the State Council ("SASAC"). § 1250(g)(2)(B)(i).

[4] An entity may qualify as a "military-civil fusion contributor" based on several criteria. Relevant to this Order, an entity is a military-civil fusion contributor if it is "managed, overseen, or supervised by, controlled by, otherwise under the control of, or affiliated with" MIIT, SASAC, or certain other PRC governmental agencies. § 1260H(g)(3)(B). Alternatively, a military-civil fusion contributor may be "[a]ny other entit[y] the Secretary determines is appropriate." § 1260H(g)(3)(H).

of Homeland Security may not contract with any entity on the 1260H List. *See* National Defense Authorization Act for Fiscal Year 2024, Pub. L. No. 118-31, § 805(a)(1)(A), (b), 137 Stat. 136, 315-16 (2023); Department of Homeland Security Appropriations Act 2026, Pub. L. No. 119-86, § 535, 140 Stat. 773, 804 (2026). State governments also impose further penalties on entities listed on the 1260H List. *See, e.g.*, Neb. Rev. Stat § 49-1480(1)(a)(vi) (requiring lobbyists for CMCs to file additional acknowledgment); Nev. Rev. Stat. § 493.118(6)-(7) (restricting purchase and use of unmanned aerial vehicles sold by entities on 1260H List), Tex. Gov. Code. § 809A *et seq.* (requiring state governmental entities to divest from entities listed on 1260H List).

**2. Section 4663**

On December 23, 2024, Congress enacted the Servicemember Quality of Life Improvement and National Defense Authorization Act for Fiscal Year 2025 ("Act"), with Section 851 of the Act being codified as 10 U.S.C. § 4663. Pub. L. No. 118-159, § 851, 138 Stat. 1773, 1995 (Dec. 23, 2024), *as amended by* Pub. L. No. 119-60, § 1701(a)(29), 139 Stat. 718, 1209 (Dec. 18, 2025). Section 4663 states that "the Secretary of Defense may not enter into a contract with an entity, a parent company of such entity, or a subsidiary of such entity if such entity is a party to a contract with a covered lobbyist." 10 U.S.C. § 4663(a). A covered lobbyist is defined as "an entity that engages in lobbying activities for any entity determined to be a Chinese military company listed" on the 1260H List. *Id.* § 4663(d)(1). In turn, the term "lobbying activities" broadly includes "lobbying contacts and efforts in support of such contacts, including preparation and planning activities, research and other background work that is intended, at the time it is performed, for use in contacts, and coordination with the lobbying activities of others." 2 U.S.C. § 1602(7); *see* 10 U.S.C. § 4663 (incorporating definition through 10 U.S.C. § 971 prec. note). Thus, under Section 4663, the Department would not contract with any company that hired a lobbyist who was also retained by a CMC. Section 4663 went into effect on June 30, 2026.

A joint explanatory statement was submitted as part of the Congressional Record for the Act. 170 Cong. Rec. H6596 (daily ed. Dec. 10, 2024). The statement explains that Section 851 "would prohibit the Department of Defense from contracting with companies that retain lobbying firms that also lobby for Chinese military companies as defined by the Department

United States District Court
Northern District of California

of Defense's 1260H list." 170 Cong. Rec. H6639. The statement then "direct[s] the Comptroller General of the United States to submit a report to the congressional defense committees, not later than one year after the enactment of this Act, on the national security risks posed by consulting firms who simultaneously contract with the Department of Defense and the Chinese government or its proxies or affiliates." *Id.* The joint explanatory statement does not otherwise discuss lobbyists who simultaneously lobby for CMCs and defense contractors.

**C. 1260H List**

On October 7, 2025, Bloomberg News reported that the Pentagon had concluded that Alibaba and several other companies should be added to the 1260H List. Armbrust Decl. Ex. B at 2, ECF No. 21-2 ("Deputy Defense Secretary [] Feinberg informed lawmakers of the conclusion in [a] Oct. 7 letter[.]").[5] The same article also stated that it had been reported earlier that month that a White House memorandum "said Alibaba had provided the Chinese military with technology support against targets in the U.S." *Id.* at 3 (reporting that "[t]he company rejected the claims, calling them 'completely false'").

On December 18, 2025, several members of Congress wrote to the Defense Secretary "applaud[ing] recent actions taken by the Department, including . . . reports that an October 7, 2025 letter from [Deputy Secretary Feinberg] informed the Armed Services Committees that Alibaba, Baidu, and BYD should be added to the list of companies that aid the PRC's military." Armbrust Decl. Ex. C at 2, ECF No. 21-3. On January 21, 2026, Alibaba representatives met with the Department and "explained that Alibaba is not owned or controlled by or affiliated with the Chinese government or military." Pelletier Decl. ¶ 12. Alibaba presented information about the company, its products and infrastructure, its compliance program to prevent military end uses for its products, and its "cooperative and productive relationship with the United States government." *Id.* ¶¶ 13-19.

On February 13, 2026, the Department posted the 1260H List on the Federal Register website for public inspection. Armbrust Decl. ¶ 7, *id.* Ex. D, ECF No. 21-4; *id.* Ex. E, ECF

[5] All exhibit page numbers refer to the ECF page numbers.

United States District Court
Northern District of California

No. 21-5. The list included Alibaba Group Holding Limited.[6] *Id.* Ex. D at 3. The stated basis for inclusion on the list was Alibaba's alleged status as an entity "indirectly affiliated with SASAC" and "a military-civil fusion contributor to the Chinese defense industrial base because it is affiliated with MIIT." *Id.* Later that day, the Department requested that the notice for publication be taken down. Armbrust Decl. Ex. E at 2. The notice was on the Federal Register website for about an hour before it was taken down. *Id.* Ex. F at 3, ECF No. 21-6. Alibaba asked the Department to explain Alibaba's addition to the 1260H List but did not receive a substantive response. Pelletier Decl. ¶ 21. Alibaba then made a supplemental submission to the Department, explaining that it "did not have a close relationship with SASAC" and "its relationship with MIIT [was] that of regulator-regulated party." *Id.* ¶ 22.

"Nevertheless, the Department issued an updated 1260H List on June 8, 2026 and again included [Alibaba Group Holding Limited] alleging the same bases." Pelletier Decl. ¶ 23. The stated basis for Alibaba's designation again was its alleged indirect affiliation with SASAC and status as "a military-civil fusion contributor" affiliated with MIIT. 91 Fed. Reg. 35,189 (June 10, 2026). After Alibaba was placed on the 1260H List, its lobbyists – including some who had represented Alibaba for almost a decade – began withdrawing their registrations under the Lobbying Disclosure Act to advocate on Alibaba's behalf. Pelletier Decl. ¶ 28. Multiple lobbying firms told Alibaba that their withdrawal was due to Section 4663. *Id.* ¶ 29. By June 30, the day that Section 4663 went into effect, Alibaba had no registered lobbyists. *Id.* ¶ 28.

According to Alibaba, it cannot effectively petition the federal government without its lobbyists. *Id.* ¶ 31. Alibaba has been sidelined while Congress and the Executive Branch consider policies relevant to its business, such as AI models, consumer products imports, and FCC authorization for devices. *Id.* ¶¶ 31-34; Pelletier Suppl. Decl. ¶ 9, ECF No. 38. Additionally, members of Congress have publicly requested that further action be taken against Alibaba, including suspending it from the New York Stock Exchange and cancelling its advertising

[6] While Alibaba Group (U.S.) Inc. was not designated on the 1260H List, Section 1260H considers an entity's "wholly-owned or wholly-controlled subsidiary" to also be a CMC. § 1260H(g)(2)(C).

United States District Court
Northern District of California

partnerships with the Washington Capitals and Washington Wizards. Pelletier Suppl. Decl. ¶ 10. Alibaba asserts that before Section 4663 took effect, it would have engaged with policymakers on all these issues. *Id.* ¶ 11. Alibaba states that with the high "volume of federal actions" in numerous subject matters over a short time frame, it is "impractical[]" for Alibaba to recruit enough experienced in-house lobbyists on such a short timeline. *Id.* 12.

## II. PROCEDURAL HISTORY

On June 23, 2026, Alibaba filed this action against Defendants, seeking declaratory and injunctive relief. Alibaba brought three claims under the Administrative Procedure Act ("APA"); an as-applied and facial First Amendment challenge to Section 4663; and an as-applied and facial, void-for-vagueness challenge under the Due Process Clause as to Section 4663. Compl. ¶¶ 75-108, ECF No. 1. Four days later, Alibaba filed a motion for temporary restraining order and preliminary injunction, moving solely on its First Amendment claim. Mot. for Prelim. Inj., ECF No. 20 ("Mot."). Alibaba requested that the Court order Defendants to: (1) remove Alibaba from the 1260H List, (2) enjoin Defendants from enforcing Section 4663 against any entity, or (3) enjoin Defendants from enforcing Section 4663 against entities that contract with Alibaba's lobbyists. *Id.* at 21-22.

Pursuant to the parties' stipulation, the Court entered a temporary restraining order, enjoining Defendants from enforcing Section 4663 solely as to Alibaba. Order, ECF No. 29. The parties timely filed briefs opposing and in support of Alibaba's motion. Opp., ECF No. 34; Reply, ECF No. 37. The Court heard argument on August 27, 2026. The interim measure is scheduled to end on October 26, 2026, pursuant to the parties' stipulation.

## III. LEGAL STANDARD

In order for the Court to grant a preliminary injunction, Alibaba must establish that: (1) it is likely to succeed on the merits, (2) it faces a likelihood of irreparable harm in the absence of a preliminary injunction, (3) the balance of equities weighs in its favor, and (4) the injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). In the Ninth Circuit, "if a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of

success on the merits – then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (citation modified). "Where, as here, the party opposing the injunctive relief is a government entity, the third and fourth factors – the balance of equities and the public interest – merge." *Hubbard v. City of San Diego*, 139 F.4th 843, 854 (9th Cir. 2025) (citation modified).

The plaintiff's likelihood of success on the merits "is the most important (and usually decisive) [*Winter* factor] in cases where a plaintiff brings a constitutional claim[.]" *Baird v. Bonta*, 81 F.4th 1036, 1041 (9th Cir. 2023). "If a plaintiff bringing [a claim based on a constitutional violation] shows he is likely to prevail on the merits, that showing will almost always demonstrate he is suffering irreparable harm as well." *Id.* at 1042. "A plaintiff's likelihood of success on the merits of a constitutional claim also tips the merged third and fourth factors decisively in his favor." *Id.*

## IV. DISCUSSION

Alibaba raises both as-applied and facial First Amendment challenges to Section 4663, arguing that the statute violates its rights to speech and to petition the government. Mot. at 9-14, 18-20. In evaluating whether Alibaba is entitled to a preliminary injunction, the Court considers the *Winter* factors. The Court finds that Alibaba is likely to succeed on the merits of its as-applied challenge, but has not met its burden for a facial challenge at this time. The Court then determines that irreparable harm is likely to occur without injunctive relief and that the balance of equities and the public interest favor an injunction because First Amendment rights are at issue. Finally, the Court addresses the scope of relief and appropriate bond under Federal Rule of Civil Procedure 65(c).

### A. Likelihood of Success on the Merits

The Court begins with considering the merits of Alibaba's as-applied challenge to Section 4663, and then turns to its facial challenge of the statute.

**1. As-Applied Challenge**

"Courts asked to issue preliminary injunctions based on First Amendment grounds face an inherent tension: the moving party bears the burden of showing likely success on the merits . . . and yet within that merits determination[,] the government bears the burden of justifying its speech-restrictive law." *Cal. Chamber of Com. v. Council for Educ. and Rsch. on Toxics*, 29 F.4th 468, 477 (9th Cir. 2022) (citation modified). Because of this tension, the party seeking a preliminary injunction in this context "bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction on speech." *Id.* (citation modified).

Applying this framework, the Court finds that Alibaba has met its initial burden to raise a colorable claim that Section 4663 infringes Alibaba's First Amendment rights to speech and to petition the government.[7] Since Alibaba has made a colorable claim that its First Amendment rights were impacted by Section 4663, the burden shifts to Defendants to prove that this restriction is justified. The Court next considers the appropriate level of scrutiny that should apply and concludes that strict scrutiny applies because Section 4663 restricts political speech based on the speaker's identity. Finally, the Court finds that Defendants have failed to meet their burden –

[7] Alibaba argues that its ability to hire a lobbyist implicates not only its right to speech under the First Amendment, but also its right to petition. Mot. at 9-11. However, the parties cite almost exclusively to cases regarding the right to speech, and do not explain the difference in analyses, if any, between the First Amendment's Freedom of Speech and Right to Petition Clauses. The Court notes that there may be instances where "Speech Clause precedents" would not "resolve Petition Clause claims," because of the "special concerns of the Petition Clause[.]" *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388-89 (2011).

The Court considers these rights in tandem here because regulations on lobbying have often been considered under Speech Clause precedent. *See, e.g.*, *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 369 (2010) (noting that disclosure requirements, including for lobbyists, have been upheld as "a less restrictive alternative to more comprehensive regulations of speech"); *McDonald v. Smith*, 472 U.S. 479, 482 (1985) ("The right to petition is cut from the same cloth as the other guarantees of that Amendment"); *Regan v. Tax'n with Representation of Wash.*, 461 U.S. 540, 545 (1983) (considering whether tax exemption for certain lobbying groups was a subsidy of speech).

Alibaba also cites case law discussing the First Amendment right to association. Mot. at 10-11. Alibaba argues that "[s]evering a company" from its lobbyists "burdens the right to speak and petition itself, not some lesser interest in a preferred consultant[.]" Reply at 6. Because Alibaba itself characterizes the right to associate as somewhat ancillary to the rights to speak and petition, the Court focuses its analysis on the latter.

whether under strict or intermediate scrutiny – given the absence of evidence provided by Defendants to justify such a restriction.

**a. Colorable First Amendment Claim**

To raise a colorable claim, Alibaba has the burden to demonstrate Section 4663 implicates the First Amendment. First Amendment scrutiny is triggered when the government seeks to "proscrib[e] speech . . . or expressive conduct[.]"[8] *R. A. V. v. City of St. Paul*, 505 U.S. 377, 382 (1992); *see also TikTok*, 604 U.S. at 68 (citation omitted). Alternatively, First Amendment scrutiny may be appropriate for a regulation of "activity with no expressive component" that "impose[s] a disproportionate burden upon those engaged in protected First Amendment activities." *TikTok*, 604 U.S. at 68. On the other hand, a law is not subject to First Amendment scrutiny if it is a "general[ly] applicabl[e]" regulation that incidentally causes a First Amendment burden. *Arcara v. Cloud Books, Inc.,* 478 U.S. 697, 705 (1986).

To establish that its First Amendment rights had been infringed, a plaintiff does not need to establish that it has been completely silenced. "The distinction between laws burdening and laws banning speech is but a matter of degree." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 812 (2000). "The First Amendment protects [the] right not only to advocate [a petitioner's] cause but also to select what they believe to be the most *effective* means for so doing." *Meyer v. Grant*, 486 U.S. 414, 425 (1988) (emphasis added).

The Court finds that First Amendment scrutiny applies because Section 4663 regulates speech. By restricting Alibaba's ability to retain lobbyists, Section 4663 functionally restricts its political speech. "Discussion of public issues" is "pure speech" that is at "the core of the protection afforded by the First Amendment[.]" *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 345-46 (1995); *see also Meyer*, 486 U.S. at 422 ("[C]ommunication concerning political change [] is appropriately described as 'core political speech.'"). The First Amendment also protects "[t]he right to petition," that is, "the right of the people to inform their representatives in

---

[8] First Amendment scrutiny may also apply if the government seeks to regulate "conduct that has an expressive element." *TikTok Inc. v. Garland*, 604 U.S. 56, 68 (2025) (citations omitted). The parties do not argue that this statute implicates conduct with an expressive element.

government of their desires with respect to the passage or enforcement of laws[.]" *E. R. R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 138-39 (1961). Lobbying government officials is therefore an activity fully protected by the First Amendment. *FTC v. Super. Ct. Trial Laws. Ass'n*, 493 U.S. 411, 426 (1990) ("It is, of course, clear that the association's efforts to . . . lobby District officials to enact favorable legislation . . . were activities that were fully protected by the First Amendment."); *see also Miller v. Ziegler*, 109 F.4th 1045, 1049 (8th Cir. 2024) ("The role of a lobbyist is to influence government policy through information and persuasion, which qualifies as core political speech." (citations modified)). "[The] First Amendment has its 'fullest and most urgent' application in the case of regulation of the content of political speech." *Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 585 (1983) (quoting *Brown v. Hartlage*, 456 U.S. 45, 53 (1982)). Thus, "political speech must prevail against laws that would suppress it, whether by design or inadvertence." *Citizens United*, 558 U.S. at 340.

At first glance, the statute does not appear to be directly relevant to the First Amendment. The statute bars the Department from contracting with any defense contractor who retains the same lobbyist as a CMC. The statute contains no provision stating that Alibaba may not engage with policymakers. Alibaba is not even prohibited from finding another lobbying firm that would be willing to represent it. But by "looking through forms to the substance," it is clear that Alibaba's ability to retain lobbyists and thus speak to the government is being burdened. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963).

Here, Section 4663 appears to be directed at defense contractors, but its consequences are on Alibaba's speech. "[A] government official cannot do indirectly what she is barred from doing directly" by "coerc[ing] a private party to punish or suppress disfavored speech on her behalf." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 190 (2024). The Supreme Court's decisions in *Bantam* and *Vullo* are instructive. In *Bantam*, the Supreme Court found that *book publishers'* First Amendment rights were harmed when the state government sent notices to the book *distributor*, informing him that some of the publishers' books were obscene and notifying him of the possibility of prosecution. *Bantam*, 372 U.S. at 61-63. In response, the distributor stopped selling

the named books and returned unsold copies to the publishers. *Id.* at 63. The Court held that the publishers' First Amendment rights were violated because the state government "interfered with the business relationship between the distributor and the publishers in order to suppress the publishers' disfavored speech." *Vullo*, 602 U.S. at 196 (discussing *Bantam*, 372 U.S. at 66-71).

The Supreme Court in *Vullo* applied *Bantam* to find that a New York regulator's actions constituted a direct burden on the National Rifle Association's ("NRA") speech. In *Vullo*, a New York state regulator told insurance companies and banks to disassociate from the NRA or otherwise face enforcement actions. *Id.* at 183-84. The Supreme Court found that the regulator had interfered with the NRA's insurers and banks, because the regulator knew that the NRA "relied on insurance and financing to disseminate its message." *Id.* at 196-97 (citations omitted). Thus, like in *Bantam*, the regulator interfered with the NRA's relationships to suppress disfavored speech.[9] Similar to *Bantam* and *Vullo*, Section 4663's impact falls on the relationship between Alibaba and the third parties crucial to its speech rights. Thus, the Court finds that Section 4663 burdens Alibaba's speech.

Defendants raise two arguments why First Amendment scrutiny does not apply. First, Defendants assert that there is no burden on Alibaba's First Amendment rights, because Alibaba still has options to lobby the federal government. Opp. at 9-11. Second, Defendants argue that this statute is not the sort of regulation subject to First Amendment scrutiny. *Id.* at 5-9. The Court addresses these arguments in turn.

First, Defendants observe that Alibaba is not completely banned from appearing before the federal government - it could hire more in-house lobbyists or find a firm that is willing to forgo defense contractor clients. *Id.* at 11. However, the Court finds that Alibaba has made a sufficient showing that its First Amendment rights have been burdened. It is true that the First Amendment does not "guarantee the right to employ every conceivable method of communication at all times

[9] Defendants attempt to limit *Vullo* to being solely about viewpoint discrimination. Opp. at 11. However, Defendants do not provide any reason that the principle in *Vullo* does not apply here. It is illogical that the government may not coerce a third party to restrict a particular viewpoint, but may coerce a third party to restrict the political speech of a disfavored category of speakers.



United States District Court
Northern District of California

United States District Court
Northern District of California

and in all places." *Members of City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 812 (1984). However, the First Amendment guarantees the right to *effective* speech. *Meyer*, 486 U.S. at 425. The availability of "more burdensome avenues of communication[] does not relieve [the] burden on First Amendment expression." *Id.* at 424 (citation modified); *see also Citizens United*, 558 U.S. at 337-38 ("First Amendment problems" with statute banning corporate speech not solved by "burdensome alternatives"); *Miller*, 109 F.4th at 1050 (lobbying ban prevented company from advocating in the "most effective" way.); *Autor v. Pritzker*, 740 F.3d 176, 183 (D.C. Cir. 2014) (lobbyists' inability to participate in commission, an "especially effective way to affect government policy," is not rectified by availability of other forums). Alibaba is unlikely to find a lobbyist willing to forgo any clients who might want to contract with the Department. It represents that it cannot hire the number of experienced in-house lobbyists needed to address the federal government for all its interests. Pelletier Suppl. Decl. ¶ 12. Thus, it is not necessary for Alibaba to show that it is entirely barred from lobbying. The reduction to Alibaba's speech is sufficient to demonstrate a colorable First Amendment claim.[10]

Second, Defendants argue that the Court should find that the First Amendment is not implicated by Section 4663 because it is "not the type of regulation of non-expressive activity" that impacts First Amendment activities. Opp. at 7-9. In support of this argument, Defendants rely heavily on *TikTok*, where the Supreme Court considered a statute requiring TikTok, a social media platform, to divest from a foreign adversary's control. 604 U.S. at 68. The Court found that the divestiture statute was "a regulation of corporate control" and assumed, without deciding, that the divestiture statute was a regulation on non-expressive activity subject to First Amendment

[10] Defendants argue that First Amendment scrutiny is not warranted because even with Section 4663 in effect, Alibaba will not face punishment for speaking. Opp. at 8-9. Defendants cite *Minneapolis Star*, where the Supreme Court held that a tax on paper and ink used exclusively in publications infringed on a newspaper's First Amendment activities. Defendants argue that unlike *Minneapolis Star* where the newspapers had to pay taxes to continue operating, Alibaba does not face any penalty if it chose to speak. *Id.* at 9. However, the Supreme Court in *Minneapolis Star* did not discuss any civil or criminal penalties that would result if the plaintiff did not pay the taxes. Instead, the tax burden falling "almost exclusively" upon the newspapers was sufficient to trigger First Amendment scrutiny. *Arcara*, 478 U.S. at 704 (discussing *Minneapolis Star*, 460 U.S. at 581). Similarly, Alibaba is not required to show that it faces punishment if it were to speak. The burden on its ability to speak is sufficient.

United States District Court
Northern District of California

scrutiny based on the burden on TikTok users' expressive activity. *Id.* at 68. In making this assumption, the Court expressed some skepticism regarding whether the First Amendment was implicated, noting that the divestiture statute was "different" from other regulations of non-expressive activity, which courts had found were subject to First Amendment scrutiny. *Id.* at 69. The Court observed that "the Act's focus on a foreign government, congressionally determined adversary relationship between that foreign government and the United States, and the causal steps between the regulations and the alleged burden on protected speech [] may impact whether First Amendment scrutiny applies." *Id.*

Defendants urge that Section 4663 is the situation contemplated by *TikTok*. Defendants' logic is as follows: Section 4663 focuses on a foreign government and there are several causal steps between the regulation and the impact on First Amendment activities, so the First Amendment should not apply. Opp. at 7. The Court finds this argument unconvincing. First, Defendants provide no authority that a regulation's focus on a foreign government exempts it from First Amendment scrutiny. Second, *TikTok* is distinguishable because the Court considered the divestiture statute to be a regulation of non-expressive activity and then questioned whether the "disproportionate burden" to TikTok users' First Amendment rights could be clearly linked to the divestiture statute. *TikTok*, 604 U.S. at 68-70.

Here, Section 4663 impacts Alibaba's ability to retain lobbyists, and therefore restricts Alibaba's ability to petition and speak to the government. Because Alibaba's ability to petition and speak to the government is directly impacted by the statute, some level of First Amendment scrutiny must apply. Furthermore, the causal link between Section 4663 and the burden on Alibaba's First Amendment rights is far from attenuated. The statute applies to defense contractors who contract with "entities" – in other words, lobbying firms – who also contract with CMCs. Defense contractors would not risk their ability to enter into a contract with the federal government when there are plenty of capable lobbying firms available. The lobbying firm then must choose. One or more of its lobbyists can choose to represent Alibaba, but then the entire lobbying firm must forgo representing defense contractors. The only rational choice for a lobbying firm is to stop representing Alibaba. The burden on Alibaba's First Amendment rights is

therefore the "predictable effect of Government action on the decisions of third parties." *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019); *see also Jenner & Block LLP v. U.S. Dep't of Just.*, 784 F. Supp. 3d 76, 105-10 (D.D.C. 2025). Thus, the Court finds that Section 4663 is subject to First Amendment scrutiny.

**b. Level of Scrutiny**

Because Alibaba has made a colorable claim that its First Amendment rights have been infringed, the burden shifts to Defendants to justify the restriction to speech. *Doe v. Harris*, 772 F.3d 563, 570 (9th Cir. 2014). The Court first determines which level of scrutiny is appropriate – strict or intermediate scrutiny. In doing so, the Court considers what type of speech is at issue, as well as whether the statute is a content-based or content-neutral restriction.[11]

"Laws that burden political speech are 'subject to strict scrutiny[.]'" *Citizens United*, 558 U.S. at 340. "In the First Amendment context, the level of scrutiny to be applied depends upon the 'content neutrality' of the statute." *Doe*, 772 F.3d at 574 (quoting *Hill v. Colorado*, 530 U.S. 703, 719 (2000)). "Content-based regulations are subject to the most exacting scrutiny because 'the government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Id.* (quoting *Police Dep't. of Chicago v. Mosley,* 408 U.S. 92, 95 (2014)). In examining a statute, courts must also examine "restrictions distinguishing among different speakers, allowing speech by some but not others." *Citizens United*, 558 U.S. at 340. "Speech restrictions based on the identity of the speaker are all too often simply a means to control content." *Id.* Thus, identity-based regulations may "demand strict scrutiny when they reflect the Government's preference for the substance of what the favored speakers have to say (or aversion to what the disfavored speakers have to say)." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 658 (1994) ("*Turner I*").

[11] The parties focus solely on intermediate and strict scrutiny. Thus, the Court does not consider whether Section 4663 would survive under other levels of scrutiny such as exacting scrutiny. *See, e.g.*, *Smith v. Helzer*, 95 F.4th 1207, 1214 (9th Cir.) (considering exacting scrutiny for regulation requiring disclosure of political speech), *cert. denied sub nom. Smith v. Stillie*, 145 S. Ct. 567 (2024).

The Court finds that strict scrutiny is appropriate here. First, Section 4663, by restricting Alibaba's ability to retain lobbyists, regulates political speech. Second, Section 4663 is a speaker-based restriction on speech – it is only applicable if a CMC seeks to retain a lobbyist. As a speaker-based restriction on political speech, Section 4663 is subject to strict scrutiny.[12] *Doe*, 772 F.3d at 575 (citing *Citizens United*, 558 U.S. at 340-41).

Defendants assert that Section 4663 should be considered under intermediate scrutiny, because Alibaba's "differential treatment" is justified by its "special characteristic[]," namely the potential involvement of a foreign adversary. Opp. at 17 (citing *TikTok*, 604 U.S. at 73). Defendants again rely on *TikTok*, where the Supreme Court applied intermediate scrutiny despite finding that the divestiture statute was a speaker-based restriction, because the differential treatment was due to a content-neutral reason, namely TikTok's susceptibility to foreign control. *TikTok*, 604 U.S. at 72-73. While Section 4663 also involves a foreign adversary, *TikTok* is distinguishable because political speech was not at issue. *Id.* at 73 ("emphasiz[ing] the inherent narrowness" of its holding and observing that "[a] law targeting any other speaker would by necessity entail a distinct inquiry and separate considerations"). Here, Defendants provide no authority to suggest that differential treatment with respect to *political speech* may be considered under intermediate scrutiny. *Citizens United* states the opposite: "Laws that burden political speech are 'subject to strict scrutiny,'" and "the First Amendment generally prohibits the suppression of political speech based on the speaker's identity." *Citizens United*, 558 U.S. at 340,

---

[12] Alibaba asserts that strict scrutiny should also apply because Section 4663 is a content-based speech restriction in that it is triggered by lobbyists speaking about "particular subjects," such as federal regulations. Reply at 7-8 (citing *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)). A firm that advises a CMC about issues unrelated to government policy would not be affected. *Id.* The Court disagrees. *Reed* illustrates why Section 4663 is *not* a content-based restriction. At issue in *Reed* was a regulation concerning temporary directional signs. 576 U.S. at 159. The Supreme Court found that the regulation was content-based, *not* speaker-based, because the restriction was triggered by the signs' contents and "appl[ied] equally no matter who sponsor[ed]" the signs. *Id.* at 162, 164, 169-70. The converse is true here. Section 4663 operates based *solely* on whether a CMC is involved. What the CMC (or non-CMC) plans to say does not affect whether Section 4663 applies.

350 (citation omitted). The Court thus applies strict scrutiny in determining whether Section 4663 violates the First Amendment.[13]

**c. Strict Scrutiny Analysis**

Because Alibaba has made out a colorable claim that Section 4663 restricts speech, the burden shifts to the government to justify the restriction. *Doe*, 772 F.3d at 570. Because strict scrutiny applies, the government must "prove that the 'restriction furthers a compelling interest and is narrowly tailored to achieve that interest.'" *Citizens United*, 558 U.S. at 340 (citation modified). At the preliminary injunction stage, a plaintiff will be "deemed likely to prevail" on the merits if the government fails to demonstrate either that the regulation addresses a compelling state interest or less restrictive alternatives are not as effective as the regulation in question. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006) (citation omitted). The Court considers the asserted government interests and the means used to achieve those interests. The Court finds that Defendants have not met their burden to justify the restriction on speech.

**i. Government Interest**

Defendants argue that Section 4663 addresses two compelling interests: (1) to prevent CMCs "from accessing sensitive military information through their relationships with lobbyists," and (2) to ensure that CMCs "cannot subtly influence any of [the Department's] decisions related to national security by influencing a lobbyist." Opp. at 18.

"It is obvious and unarguable that no governmental interest is more compelling than the security of the Nation." *Twitter, Inc. v. Garland*, 61 F.4th 686, 698 (2023) (citation modified). In the context of national security, the Court "must accord substantial deference" to Congress and the Executive Branch's evaluation of facts. *TikTok*, 604 U.S. at 75 (citation omitted); *see also*

[13] The Court recognizes that this is a close question. But for the context of political speech – specifically the ability and right to petition the government – Defendants' argument that intermediate scrutiny should apply would likely prevail, because Section 4663 is otherwise a content-neutral statute. *See* Opp. at 12-17. As in *TikTok*, Section 4663 singles out a particular group of speakers, but not because of the content of their speech. Instead, the treatment is based on a particular characteristic of the speaker, *i.e.*, their status as a CMC. *See TikTok*, 604 U.S. at 72-73.

*Holder v. Humanitarian L. Project*, 561 U.S. 1, 33-34 (2010). However, the government cannot impose a restriction on speech based solely on "mere conjecture." *FCC v. Cruz*, 596 U.S. 289, 307 (2022) (citations omitted). Rather, it must "point to record evidence or legislative findings demonstrating the need to address a special problem." *Id.* (citation modified).

Here, Defendants fail to meet their burden. Defendants provide only one exhibit in support of their opposition: the joint explanatory statement submitted as part of the legislative record for the Act. 170 Cong. Rec. H6639. The statement provides an overview of Section 4663 and then "direct[s] the Comptroller General of the United States to submit a report to the congressional defense committees, *not later than one year after the enactment of this Act*, on the national security risks posed by consulting firms who simultaneously contract with the Department of Defense and the Chinese government or its proxies or affiliates." *Id.* (emphasis added). Of note, the Comptroller General is directed to study consulting firms, *not* lobbyists.[14] The statement does not express any findings by the Comptroller General or Congress about the risks posed by lobbyists retained by CMCs. At the preliminary injunction hearing, Defendants were unable to confirm whether a report by the Comptroller General had been submitted to Congress by December 23, 2025, one year after the Act's enactment; nor did Defendants provide a copy of the report. Other than the statement, Defendants do not provide any evidence of the national security risks or other compelling government interests.

Consequently, Defendants' evidence in support of their alleged compelling interests is inadequate to "carry a First Amendment burden." *Cruz*, 596 U.S. at 307 (citations omitted); *see Meyer*, 486 U.S. at 426 (rejecting state's asserted interest in initiative process's integrity because "[n]o evidence has been offered to support that speculation"); *Miller*, 109 F.4th at 1052 (striking down ban on lobbying because Missouri "[could not] have a compelling interest in solving a problem that it cannot prove exists"); *Stanford Daily Publ'g Corp. v. Rubio*, No. 25-cv-06618,

[14] The statement treats lobbying firms and consulting firms as separate entities. According to the statement, consulting firms could "simultaneously contract with the Federal Government and the Chinese government or its proxies or affiliates." 170 Cong. Rec. H6639. Lobbying firms are described as contracting with CMCs or defense contractors. *Id.*



United States District Court
Northern District of California

2026 WL 2549090, at *39 (N.D. Cal. Aug. 28, 2026) ("Conclusively using the phrase 'compelling foreign-policy interests' or 'sufficiently compelling circumstances' is not a proxy for proving the government's purported compelling interest in abridging the freedom of speech under the First Amendment."); *cf. Holder*, 561 U.S. at 33, 38-39 (upholding statute barring financial support for terrorist organizations based on congressional and executive findings, as well as State Department affidavit).

Defendants urge that the Court should nevertheless defer to Congress' judgment that the purported military information and improper influence concerns exist. Opp. at 19. As the Supreme Court stated in *Cruz*, Congress is normally "far better equipped than the judiciary to amass and evaluate the vast amounts of data bearing upon legislative questions." *Cruz*, 596 U.S. at 313 (citation omitted). But "the evidence here is scant[.]" *Id.* Defendants must provide more to justify a restriction on First Amendment rights.

**ii. Means**

Even assuming that Defendants made a sufficient showing as to the interests furthered by Section 4663, Defendants do not meet their burden for the second step of strict scrutiny. Under strict scrutiny, the government must show that "the curtailment of free speech [is] actually necessary" to address the harms alleged by the government. *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 799 (2011). The government must demonstrate that the restriction is "the least restrictive means among available, effective alternatives." *Ashcroft v. ACLU,* 542 U.S. 656, 666 (2004).

Defendants do not offer any evidence demonstrating that alternative means were contemplated, much less rejected for being insufficient. Again, the only document submitted by Defendants was the joint explanatory statement. The statement does not contain any discussion of other means contemplated by Congress. Meanwhile, Alibaba submits evidence that less alternative restrictions may exist. With respect to CMCs, Nebraska has required lobbyists representing entities on the 1260H List to file an acknowledgment that they are representing a foreign adversary. Neb. Rev. Stat § 49-1480(1)(a)(vi). The Supreme Court "has upheld registration and disclosure requirements on lobbyists" as a "less restrictive alternative to more

comprehensive regulations of speech." *Citizens United*, 558 U.S. at 369. Defendants present no reason why a disclosure requirement, like Nebraska's, would be inadequate for the federal government. Instead, Defendants summarily conclude that Alibaba's proposed disclosure requirement would not suffice because "there would still be access and the potential for influence." Opp. at 18. This speculation is insufficient to support a restriction on the First Amendment.

* * *

"The First Amendment was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Meyer*, 486 U.S. at 421 (citation modified). Thus, our First Amendment jurisprudence requires that "*all* speech" be protected "against government interference," unless the government can demonstrate a reason to "remove some speech from protection." *United States v. Alvarez*, 617 F.3d 1198, 1205 (9th Cir. 2010) (emphasis in original), *aff'd*, 567 U.S. 709 (2012). Defendants have not satisfied their burden under strict scrutiny to remove this protection.

While the Court applies strict scrutiny, the Court notes that Defendants do not meet their burden even under intermediate scrutiny. Under intermediate scrutiny, the government remains obligated to provide evidence of a problem addressed by the regulation. *Turner I*, 512 U.S. at 664. Defendants have not done so here. *See id.* at 664-68 (record contained insufficient evidence that Congress "[drew] reasonable inferences based on substantial evidence" to justify government interest in protecting broadcast television); *cf. TikTok*, 604 U.S. at 71-72 (upholding divestiture statute based on extensive record showing congressional concerns over foreign adversary's access to personal data). While intermediate scrutiny does not require that the government use the least restrictive means to achieve its interests, the government must at least consider less restrictive approaches. *Turner I*, 512 U.S. at 668. There is no evidence in the record of Congress determining that access to military information or improper influence were problems to be addressed. Nor is there any evidence that Congress considered other methods of achieving its interests here. *Id.* ("[T]he record fails to provide any judicial findings concerning the availability and efficacy of 'constitutionally acceptable less restrictive means' of achieving the Government's

asserted interests." (citation omitted)); *cf. TikTok*, 604 U.S. at 78 (upholding law because Congress "did not ignore less restrictive approaches already proven effective"). Thus, Defendants fail to meet their burden even under intermediate scrutiny.

Thus, the Court finds that Alibaba has established a likelihood of success as to its as-applied First Amendment challenge to Section 4663.

**2. Facial Challenge**

Alibaba also urges that the Court find Section 4663 facially overbroad. The Court finds that Alibaba has not established a likelihood of success as to its facial challenge, because it has not made the requisite showing under *Moody v. NetChoice*, 603 U.S. 707 (2025). *See NetChoice, LLC v. Bonta*, 170 F.4th 744, 758 (9th Cir. 2026).

The Supreme Court has cautioned that "facial challenges threaten to short circuit the democratic process," and that it "has therefore made [them] hard to win." *Moody*, 603 U.S. at 723 (citation omitted). In First Amendment cases, the question is whether a substantial number of "the law's unconstitutional applications substantially outweigh its constitutional ones." *Id.* (noting that this is a less demanding, "though still rigorous[,]" standard in the First Amendment context to provide "breathing room for free expression[]") (citation omitted). A facial challenge requires considering: (1) the scope and reach of the law, that is, "[w]hat activities, by what actors, do the laws prohibit or otherwise regulate"; and (2) "which of the laws' applications violate the First Amendment, and [measuring] them against the rest." *Id.* at 724, 745. "A facial challenge thus demands record development on third-party speech and the full scope of a law's potential applications." *NetChoice*, 170 F.4th at 758 (citation modified).

At this preliminary stage, the Court finds that Alibaba's facial challenge fails because there is insufficient information about the statute's scope. Because this is an overbreadth claim, the full scope of applications must be considered. Otherwise, there is the risk of "premature interpretation of statutes on the basis of factually barebones records." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008) (citation omitted). Alibaba urges that this statute must be applied in the same way to every CMC. Mot. at 18. However, Alibaba may not simply rely on "applications of the statute to its own speech." *Project Veritas v. Schmidt*, 125 F.4th 929,

961 (9th Cir.), *cert. denied sub nom. Project Veritas v. Vasquez*, 146 S. Ct. 90 (2025). It is conceivable that every CMC may be subject to the same restriction in speech, but the record has not been developed to show whether that burden would be constitutionally permissible as applied to other CMCs. The Court recognizes that Alibaba's ability to obtain information regarding other applications may have been limited at the preliminary injunction stage.[15] However, Alibaba carries the burden at both steps outlined in *Moody*. The failure to do so treats a facial challenge more like as-applied claims. *Moody*, 603 U.S. at 724. Because Alibaba did not meet its burden, the Court rejects Alibaba's facial challenge at this time. *Project Veritas*, 125 F.4th at 961; *see also Prichett v. Bonta*, 818 F. Supp. 3d 1059, 1078-79 (N.D. Cal. 2025) (declining to consider First Amendment facial challenge to statute for lack of factual information).

**B. Irreparable Harm**

To be irreparable, harm must be "imminent and not remote or speculative." *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1022 (9th Cir. 2016). Typically, irreparable harms are not quantifiable and, thus, "cannot be fully remedied with a financial award." *Novedades Y Servicios, Inc. v. Fin. Crimes Enf. Network*, 181 F.4th 961, 977 (9th Cir. 2026). By contrast, "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974).

It is "relatively easy" to establish irreparable harm when First Amendment rights are violated: "The plaintiff 'need only demonstrate the existence of a colorable First Amendment claim.'" *Council for Educ. & Rsch. on Toxics*, 29 F.4th at 482 (quoting *Brown v. Cal. Dep't of Transp.,* 321 F.3d 1217, 1225 (9th Cir. 2003)); *see also Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion))).

---

[15] At the hearing, Defendants stated that they had not provided their "full thinking on every application of" Section 4663 due to "space constraints." Hr'g Tr. 30:13-32:21, ECF No. 45. Defendants did not seek leave for additional pages.

Alibaba has demonstrated the existence of a colorable First Amendment claim, and has submitted evidence of resulting and further harm caused by the statute. Since Section 4663 has gone into effect, Alibaba has missed opportunities to lobby Congress and the Executive Branch on regulations and laws relevant to its business. Pelletier Suppl. Decl. ¶ 9. "The harm is particularly irreparable" when political speech is at issue, because "timing is of the essence in politics." *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (citation modified). Because of Section 4663, Alibaba has lost opportunities to make its views known on laws and regulations that may impact it. This injury cannot be rectified through monetary damages.

**C. Balance of Hardships and Public Interest**

When a plaintiff's First Amendment rights are violated, "the balance of hardships tips sharply" in the plaintiff's favor. *Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) (citation modified); *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (citation modified)). Specifically, there is a "significant public interest in upholding First Amendment principles." *L.A. Press Club v. Noem*, 171 F.4th 1179, 1190 (9th Cir. 2026) (citation modified).

Given the record before the Court, the balance of equities and the public interest both weigh in favor of Alibaba. *Doe*, 772 F.3d at 583. "The government cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Baird*, 81 F.4th at 1042 (citation modified). At this preliminary stage, Defendants' "empty invocation" of national security without record citation or evidentiary support cannot affect the balance of equities. *Anthropic PBC v. U.S. Dep't of War*, No. 26-cv-01996, 2026 WL 2534714, at *1 (N.D. Cal. Aug. 27, 2026) ("The empty invocation of national security is not a blank check[.]"). While the Court defers "to the professional judgment of military authorities concerning the relative importance of a particular military interest," this deference only occurs with a showing of the national security risk. *Winter*, 555 U.S. at 24-26 (considering declarations from Navy's most senior officers). "Finally, the public interest favors the exercise of First

Amendment rights." *Doe*, 772 F.3d at 583. Thus, the balance of equities and the public interest tip in Alibaba's favor.

* * *

For the foregoing reasons, the Court finds that Alibaba has satisfied the *Winter* elements and are entitled to a preliminary injunction based on its as-applied challenge.

## V. SCOPE OF RELIEF

The Court has broad powers in shaping injunctive relief. It is well established that "the scope of a preliminary injunction must be no broader than necessary to provide complete relief to the named plaintiffs." *Thakur v. Trump*, 176 F.4th 1187, 1206 (9th Cir. 2026) (citation modified). While the Court *may* award complete relief, "[c]omplete relief is not a guarantee – it is the maximum a court can provide.'" *Trump v. CASA, Inc.*, 606 U.S. 831, 854-54 (2025)).

In its preliminary injunction motion, Alibaba requested that the Court order any of the following: (1) require Defendants to remove Alibaba from the 1260H List, (2) enjoin Defendants from enforcing Section 4663 against any entity, or (3) enjoin Defendants from enforcing Section 4663 against entities that contract with Alibaba's lobbyists. Mot. at 22. However, Alibaba only moved for interim relief based on its First Amendment claim. Removal from the 1260H List is relief that is not addressed through Alibaba's First Amendment claim, but rather its APA claims. Because of the mismatch between Alibaba's asserted claim and its requested remedy, the Court must deny Alibaba's request that the Court vacate its 1260H designation. *Garcia v. Google, Inc.*, 786 F.3d 733, 745 (9th Cir. 2015).

Alibaba argues that removing Alibaba from the 1260H List at this stage will not be an adjudication on the merits of the Department's designation. Reply at 15. But even the two cases submitted by Alibaba counsel the opposite: Removal from the 1260H List goes directly to Alibaba's APA claims and would disturb the Department's foreign policy and national security decisions without the benefit of an administrative record. Alibaba submitted two cases: (1) *Hesai Tech. Co., Ltd v. U.S. Dep't of Def.,* 186 F.4th 873 (D.C. Cir. 2026), ECF No. 40-1; and (2) *WuXi Apptec Co. v. U.S. Dep't of Def.*, No. 26-cv-02069, 2026 WL 2279624 (D.D.C. Aug. 7, 2026), ECF No. 39-1. In both cases, the D.C. Circuit and district court considered the plaintiffs' APA

claims that their designations on the 1260H List were arbitrary and capricious. Both courts found in favor of plaintiffs. *Hesai*, 186 F.4th at 875; *WuXi*, 2026 WL 2279624, at *1. The *WuXi* court went as far as to enjoin the Department's enforcement of the 1260H designation against the plaintiff. *WuXi*, 2026 WL 2279624, at *1. However, both the D.C. Circuit and district court did not vacate the plaintiffs' designation to the 1260H List. The D.C. Circuit in *Hesai* expressly stated that consistent with its past decisions, it would not vacate the plaintiff's designation to the 1260H List due to "the realities of the foreign policy and national security concerns asserted by the Secretary in support of those designations." *Hesai*, 186 F.4th at 881-82 (citation modified). The Court finds it premature to summarily vacate Alibaba's CMC designation without reviewing the administrative record. Thus, the Court declines to reach the CMC designation at the preliminary injunction stage.

Alibaba asserts that without removal from the 1260H List, Alibaba will not have "complete relief." Hr'g Tr. 46:4-47:21. Alibaba attests that lobbyists "remain unwilling to renew their work" for Alibaba "given the limited duration of the stipulation and the long-term uncertainty concerning Section 4663's application to Alibaba." Pelletier Suppl. Decl. ¶¶ 5-6. The Court finds that a preliminary injunction enjoining enforcement of Section 4663 as to Alibaba and immediate briefing on the motion for summary judgment is sufficient to address the concerns of third parties, at least until the merits have been decided.

## VI. BOND

Defendants request that any preliminary injunction should be accompanied by a bond. For a bond to issue, the affected party bears the burden to show that it will suffer damages from the injunction and that a bond is needed. *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003) (citation omitted). "The district court is afforded wide discretion in setting the amount of the bond." *Id.* at 882 (citations omitted).

Defendants previously requested that "the bond amount reflect the cost and disruption to the Secretary's administration of the Section 1260H directive provided to him by Congress, resulting from [Alibaba's] requested relief." Opp. at 25. At the hearing, Defendants requested a nominal bond of $100. Given the lack of evidence provided by Defendants with respect to

United States District Court
Northern District of California

potential harm from the injunction, the Court sets a nominal bond of $100.

## VII. CONCLUSION

For the foregoing reasons, the Court GRANTS Alibaba's motion for preliminary injunction. The Court ORDERS as follows:

1) Until further order of the Court, Defendants, directly or indirectly, and whether alone or in concert with others, including any officer, agent, representative, and/or employee of Defendants are hereby ENJOINED and RESTRAINED from enforcing 10 U.S.C. § 4663's prohibition on the Department contracting with an entity, a parent company of such entity, or a subsidiary of such entity that is a party to a contract with any entity that engages in "lobbying activities" for Alibaba, such that, consistent with 10 U.S.C. § 4663(c), which authorizes the Secretary to waive 10 U.S.C. § 4663's requirements, Alibaba would not be treated as a Chinese military company for purposes of 10 U.S.C. § 4663 only.[16]
2) Until further order of the Court, Defendants shall not refuse to contract or otherwise deny any entity an opportunity to contract with the Department on the ground that such an entity, a parent company of such entity, or a subsidiary of such entity is a party to a contract with any entity that engages in "lobbying activities" for Alibaba.
3) Alibaba shall post a bond in the amount of $100 with the Clerk of Court and must file proof of the bond by October 30, 2026.

**IT IS SO ORDERED.**

Dated: October 26, 2026



Eumi K. Lee
United States District Judge

[16] Lobbying activities" means "lobbying contacts and efforts in support of such contacts, including preparation and planning activities, research, and other background work that is intended, at the time it is performed, for use in contacts, and coordination with the lobbying activities of others." 2 U.S.C. §§ 1602(7)-(8); *see* DFARS 240.7003-1.